## UNITED STATES DISTRICT COURT
## BOSTON, MASSACHUSETTS

RECEIPT # _____

AMOUNT $ 250.00

SUMMONS ISSUED ✓

MASSACHUSETTS DEPARTMENT OF
SOCIAL SERVICES
and
Freda KAHINDA (A 79 680 762)
Plaintiffs,

LOCAL RULE 4.1 _____

WAIVER FORM _____

MCF ISSUED _____

BY DPTY. CLK. _____

DATE 5-6-05 _____

v.

Denis RIORDAN, District Director of
Boston District Office(CIS);
Michael CHERTOFF, as Secretary of Department of
Homeland Security;
EDUARDO AGUIRRE, JR. as Director of United States
Citizenship and Immigration Services (US CIS);
DEPARTMENT OF HOMELAND  SECURITY;
and ALL UNKNOWN GOVERNMENT AGENCIES
INVOLVED IN SECURITY CHECKS
FOR APPLICANTS ,
Defendants

# 05 CV 10942 NG

)    CIVIL ACTION FILE NO.
)
)
)
)    COMPLAINT FOR
)    DECLARATORY
)    RELIEF IN THE NATURE
)    OF MANDAMUS AND
)    REQUEST FOR SPEEDY
)    HEARING
)

MAGISTRATE JUDGE _____

## I.
## INTRODUCTION

1.    This is an individual action for declaratory and mandatory relief, authorized by the Declaratory Judgment Act, 28 USC Section 2201 and 28 USC Section 1361, and the Administrative Procedure Act, 5 USC Section 551 et seq. This action challenges the Defendants' failure to adjudicate the special immigrant juvenile petition and application for adjustment of status which Plaintiffs filed on December 10, 2002. This includes a request for speedy hearing because the Plaintiff, Freda Kahinda , will turn 21 on February 2, 2006. If the case is not adjudicated before then, she will "age out" and become statutorily ineligible for the benefit sought.

## II.
## JURISDICTION

2.    This Court has jurisdiction over the present action pursuant to 28 USC Section 1331,Federal Question Jurisdiction; and 28 USC Section 2201, the Declaratory Judgment Act; 5 USC Section 702, the Administrative Procedures Act; and 28 USC Section 1361, regarding an action to compel an officer of the United States to perform his duty.

### III.
### VENUE

3.        28 USC Section 1391(e), as amended, provides that in a civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity, the action may be brought in any judicial district in which the Plaintiff or a Defendant in the action resides. Plaintiff, Department of Social Services (DSS), is a Massachusetts state agency with headquarters at  24 Farnsworth St., Boston, Massachusetts, . 02110. Freda Kahinda is a "child"[1] in DSS custody in Massachusetts. Defendant, Denis Riordan, is District Director of the Boston CIS (Citizen and Immigration Service office which has failed to adjudicate this case. Mr. Riordan's office is located at the John F. Kennedy Federal Building, Government Center, Boston, MA 02203.

### IV.
### PLAINTIFFS

4.        Plaintiff, Department of Social Services (DSS),  is the  Massachusetts child welfare agency. DSS filed a special immigrant juvenile petition for Freda Kahinda.

5.        Plaintiff, Freda Kahinda is a 20 year old youth from Uganda. She has been in DSS custody since at least May 7, 2002. She filed an application for adjustment of status (a green card) based upon the DSS petition.

6.        Both DSS and Freda Kahinda are within the zone of interest controlled by this action and therefore also have standing.

### V.
### DEFENDANTS

7.        Defendant, the Department of Homeland Security, is a Federal agency that is mandated under the law through its Director, 8 USC Section 1103(a), to supervise, implement, and enforce the Immigration and Nationality Act, including special immigrant juvenile petitions and applications for adjustment of status.

8.        Defendant, Michael Chertoff,  is the duly appointed Secretary of Homeland Security and charged under the law, 8 USC Section 1103(a), with supervising, implementing, and enforcing the Immigration and Nationality Act.

---

[1]Child is defined under U.S. immigration law as unmarried person under age 21. 8 USC 1101(b)(1).

3.      Defendant, Eduardo Aguirre, Jr., is the duly appointed Director of United States Citizenship and Immigration Services (CIS), and charged under the law, 8 USC 1103(c), with the implementation of benefits under the Immigration and Nationality Act.

10.     Defendant, Denis Riordan is the District Director of the Boston District Office of U.S. Citizenship and Immigration Services (CIS) This is the office where the Plaintiffs' petition and application have been pending since December 10, 2002..

11.     Defendants, Department of Homeland Security and Unknown Government Agencies, are those additional government agencies unknown to the Plaintiffs or Plaintiffs' counsel, that may also be involved with processing security checks for applicants for adjustment of status processed by the Department of Homeland Security.

## VI.
## FACTUAL ALLEGATIONS

12.     On May 7, 2002, Freda Kahinda was declared dependant on the Lowell Juvenile Court and committed to the custody of DSS. The Court deemed Freda eligible for long term foster care "due to the abandonment of the minor, as a result of her biological parents death and lack of kinship ties in the United States." (See court order included in Exhibit A.)

13.     Also on May 7, 2002, the Lowell Juvenile Court issued an order and finding that it was not in her best interest to be returned to Uganda due to the likelihood that she would face genital mutilation and possible physical abuse. (Included in Exhibit A).

14.     On December 10, 2002 , DSS filed a special immigrant petition for Freda together with Freda's application for adjustment of status (I-360/485.) This green card application was filed at the Boston District Office of U.S. Citizenship and Immigration Services (CIS). (Reconstructed application, Exhibit A).

15.     On May 19, 2003 the Plaintiffs (DSS social worker and Freda) attended an interview at the Boston Citizenship and Immigration Services (then called INS). After the interview on September 24, 2003 the officer requested additional documentation: birth certificate for Freda, death certificates for her parents and a letter from the court indicating what documents they reviewed to determine the parents are deceased.) Exhibit B.

16.     In December, 2003, Plaintiffs provided Defendants with the original birth certificate and affidavits from DSS explaining their unsuccessful efforts to obtain the death certificates. (Exhibit C).

17.     On September 27, 2004, Plaintiffs submitted a letter from DSS Commissioner Lewis H. Spence to Defendant, Denis Riordan asking for help resolving long delayed adjudications. The letter explained " these delays cause real hardship for the children and severely tax the limited resources within our offices." The letter included a list of long delayed cases which included this one for Freda Kahinda. (Exhibit D). The letter suggested a meeting and invited suggestions for resolving these cases.

18.     On October 14, 2004, the Defendants issued a notice of intent to deny Plaintiffs case. (Exhibit E) The main reason given was that Freda's birth certificate listed her father as declarant when he was deceased. The notice also indicates that Plaintiffs did not send a timely reply to the Form I-72, request for additional evidence. This is a mistake as that Form is dated September 24, 2003. (Exhibit B). It gave 12 weeks for compliance and the reply was submitted in December 2003. (Exhibit C.))

19.     On November 23, 2004, the Defendants submitted a rebuttal to the intent to deny. (Exhibit F).The rebuttal documents included a letter from the Ugandan Embassy which authenticated Freda's birth certificate and explained how her father could be listed as a "declarant: when he was deceased at the time the birth certificate was issued. The Ugandan Consulate explains that it is highly likely that Freda's father signed her hospital record of birth and thus was listed as "declarant" years later when the information was transferred from the hospital records to the birth certificate. The rebuttal evidence also includes a letter from Dr. Heidi Ellis of Boston Medical Center, Center for Medical and Refugee Trauma. Dr. Ellis explains how she has worked for over 3 years with Freda on her grief over the loss of her parents at the age of 6. She explains in detail why she is convinced that Freda truly believes her parents to be dead. She states:

> She was frequently very tearful and had some difficulty talking about certain elements of her story, but over time grew more comfortable talking about these details and less tearful. This is consistent with the presentation of other traumatized youth with whom I have worked. As our relationship is therapeutic, I see no potential secondary gain that might lead to someone fabricating a story in this context. Furthermore, she revealed this story to me long before she petitioned for a visa or was even aware that she could petition for a visa...

> Ms. Kahinda expressed feelings of loss that were developmentally appropriate for an adolescent who had lost her parents at a young age. For instance, Ms. Kahinida discussed feelings of sadness that she could not remember what they looked like, and expressed jealousy when college classmates were able to call their parents for

support. She further has described nightmares in which she sees her parents murdered; the content of these nightmares is consistent with what one would expect from someone who suffered the trauma and loss of their parent's murder.

(Letter from Dr. Ellis included in Exhibit F)

20.    The Plaintiffs' rebuttal to the intent to deny also includes a letter from Freda's caseworker for the past three years. This letter from Anita Marshall also vouches for Freda's story, its consistency with her symptoms and the tremendous strides Freda has made. (Exhibit F)

21.    Also, on October 21, 2004, Plaintiffs through counsel sent Defendants another letter expressing frustration with the pattern of delay in special immigrant juvenile cases and requesting a meeting between the two agencies to clarify apparent misunderstandings about child welfare law in Massachusetts. (Exhibit G) Defendant, Mr. Riordan verbally agreed to a meeting but said he wanted to involve someone from Headquarters. No meeting has been set.

22.    Thereafter, the Immigration Officer in Boston called counsel to request Freda's original passport. A paralegal from counsel's office delivered the passport to Immigration and waited while she perused and photocopied it. (2/10/05)

23.    On February 24, 2005, present counsel for Plaintiffs sent Defendants a letter entitled Notice of Intent to File Mandamus Action in Federal District Court. That letter listed 5 long overdue cases, including this one. (See Exhibit G). Defendants have verbally acknowledged receipt of this letter (and approved two of the cases). This case remains pending.

## VII.
## CLAIM FOR RELIEF

24.    Defendants have willfully, and unreasonably refused to adjudicate Plaintiffs pending petition and applications filed pursuant to 8 USC 1101 (a)(27)(J); 8 USC 1255 (h) and 8 CFR 204.11.

25.    If Freda's application is not approved prior to her 21st birthday on February 2, 2006, she will reach the age of majority unable to work, attend school or live legally in the United States.

26.    Plaintiffs have done everything in their power to resolve this case.

27.    Plaintiffs counsel has made many phone calls, written letters, asked for meetings,

given advance notice of intent to file this mandamus . Yet Defendants have failed to adjudicate this case.  Plaintiffs have exhausted any administrative remedies that may exist.

28.   Strong humanitarian factors genuinely exist in these circumstances as Plaintiffs have made every effort to file their application early, to provide all necessary documentation to the Defendants, they have diligently follow-up with DHS to obtain a timely decision in this case. Failure of the government to grant this case will have a devastating effect on Freda Kahinda's life.

29.   Special immigrant juvenile status was created for juveniles like Freda who have been placed in state custody because they have been abused, neglected or abandoned. Freda has been in DSS custody for over three years. During that time she has been in continuous therapy over the loss of her parents and the trauma she has experience in Uganda. (See letters from therapist and caseworker in Exhibit F).

30.   Instructions from Defendants' CIS Headquarters in Washington, D.C. specifically urge District Offices not to second guess the juvenile court orders and  to take precautions and expedite cases, like Freda Kahinda's, to avoid "aging out" (Exhibit I). Plaintiffs submitted a copy of this memorandum to Defendants on October 21, 2004 (Included in Exhibit F.)  This mandamus action simply seeks to compel the Defendants to follow the instructions from their own Headquarters.

**WHEREFORE,** Plaintiffs pray that the Court:


(1) Schedule a hearing to find out why the Defendants have refused to adjudicate this case.

(2) Compel Defendants, and those acting under them, to perform their duty to adjudicate the Plaintiffs' special immigrant petition and application for adjustment of status.  This includes completion of the random security check, if necessary.

(3) Compel the Defendants to adjudicate this case before February 2, 2006,  Freda Kahinda's 21st birthday.

(4) Compel the Defendants to issue timely approval notices which will enable Freda to work and go to college; and

(5) Grant such other and further relief as this Court deems proper under the circumstances.


RESPECTFULLY SUBMITTED this 6th   day of May, 2005.


Maureen O'Sullivan
Counsel for Plaintiffs
Kaplan O' Sullivan & Friedman LLP
10 Winthrop Square 3rd Fl
Boston, MA 02110

(617) 482-4500

## CERTIFICATE OF SERVICE

This is to certify that I have this day served copies of the foregoing COMPLAINT FOR DECLARATORY RELIEF AND RELIEF IN THE NATURE OF MANDAMUS by hand delivery to:

> Denis Riordan, District Director
> Boston District Office
> U.S. Department of Homeland Security
> USCIS
> 15 New Sudbury St.
> JFK Federal Building
> Boston, MA 02203

> Henry Hanley, Esq
> Litigation Unit
> Department of Homeland Security (INS)
> Room 425
> 15 New Sudbury St.
> JFK Federal Building
> Government Center
> Boston, MA 02203.

> U.S. Attorneys Office
> U.S. Courthouse, Suite 9200
> 1 Courthouse Way
> Boston, MA 02110

This 6th day of May, 2005. Counsel will also provide formal service to all Defendants with summons, but has already hand delivered these copies due to the time sensitive nature of the case.

Maureen O'Sullivan
Counsel for Plaintiffs
Kaplan O' Sullivan & Friedman LLP
10 Winthrop Square 3rd Fl
Boston, MA 02110
(617) 482-4500

⬜ JS 44 (Rev. 3/99)

# CIVIL COVER SHEET 05 1 0 9 4 2 NG

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MASSACHUSETTS DEPARTMENT OF SOCIAL SERVICES and Freda KAHINDA

**DEFENDANTS**

Denis RIORDAN, District Director of Boston District Office(CIS); Michael CHERTOFF, as Secretary of DHS, EDUARDO AGUIRRE, JR. as Director US CIS, DEPARTMENT OF HOMELAND SECURITY

**(b)** County of Residence of First Listed Plaintiff ___Suffolk___
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Maureen O'Sullivan
Kaplan O' Sullivan & Friedman LLP
10 Winthrop Square 3rd Fl , Boston, MA 02110
(617) 482-4500

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** ☐ 362 Personal Injury— Med. Malpractice | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Complaint for mandamus and declaratory relief to enforce INA 101 (a)(27)(J) 8 USC 1101 (a)(27)(J)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DSS v. Riorda **05** CV **1 0 9 4 2** NG

1. Title of case (name of first party on each side only)_____

_____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

___ I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___ II.     195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. for patent, trademark or copyright cases

___ III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

___ IV.     220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

___ V.      150, 152, 153.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
            NONE
   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                            YES ☐        NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                            YES ☐        NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                            YES ☐        NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                            YES ☐        NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☐        NO ☐  Parties ( most) are governmental agencies.

            A.      If yes, in which division do all of the non-governmental parties reside?

                    Eastern Division ☐        Central Division ☐        Western Division ☐

            B.      If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

                    Eastern Division ☒        Central Division ☐        Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                            YES ☐        NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME ___ Maureen O'Sullivan _____

ADDRESS __ Kaplan O' Sullivan & Friedman LLP ,10 Winthrop Square 3rd Fl ,Boston, MA 02110 __

TELEPHONE NO.__ (617) 482-4500 _____

(civil cover sheet.wpd - 10/17/02)

# **LIST OF EXHIBITS**

EXHIBIT A          Reconstructed copy of petition and application for special immigrant status.

EXHIBIT B          Request for additional evidence dated September 24, 2003.

EXHIBIT C          Packet of additional supporting documents delivered to Defendants on December, 2003.

EXHIBIT D          Letter from Plaintiffs, DSS Commissioner, to Defendant requesting adjudication of long delayed cases with attached list that includes Freda Kahinda's case, September 27, 2004.

EXHIBIT E          Defendant's notice of intent to deny this case, October 14, 2004.

EXHIBIT F          Plaintiffs response to notice of intent to deny, November 23, 2004.

EXHIBIT G          Plaintiffs letter to Defendant requesting a meeting to resolve recurring issues in special immigrant juvenile cases, October 21, 2004.

EXHIBIT H          Plaintiffs notice to Defendants of notice of intent to file mandamus action, February 24, 2005.

EXHIBIT I          Defendants Memorandum #2 Field Guidance on Special Immigrant Juvenile Status petitions.

# EXHIBIT A

# Reconstructed copy of petition and application for special immigrant status.

KAPLAN, O'SULLIVAN & FRIEDMAN, LLP
ATTORNEYS AT LAW

TEN WINTHROP SQUARE · THIRD FLOOR   BOSTON, MASSACHUSETTS 02110 ·

HARVEY KAPLAN
MAUREEN O'SULLIVAN
JEREMIAH FRIEDMAN

(617) 482-4500
FAX: (617) 422-0997

December 10, 2002

U. S. Immigration and Naturalization Service
JFK Federal Building
Government Center
Boston, MA 02203

**Re:** **Freda Kahinda**
      **Application for Special Immigrant Juvenile Status**

Dear Officer:

Please find enclosed a special immigrant petition and application for adjustment of status for Freda Kahinda.  Specifically, I have enclosed the following:

1.  Form G-28, Notice of Entry of Appearance of Attorney;
2.  Form I-360, Petition for special immigrant status;
3.  Court order specifying that Ismael is a minor declared dependent upon the court and eligible for long term foster care. The court order also states that it is not in Freda's best interest to return home;
4.  Form I-485, application for adjustment of status;
5.  Form G-325A, biographic information;
6.  Form I-181 processing sheet;
7.  Photographs;
8.  Passport;
9.  Affidavit of support of fee waiver;
10. I-765 form;
11. Medical form;
12. Evidence of abuse, neglect, abandonment (Affidavit).

Please note that Freda Kahinda is dependent upon the Commonwealth of Massachusetts. Therefore, please waive the fee for humanitarian reasons and schedule her appointment. Thank you.

Sincerely,

*Maureen O'Sullivan*

Maureen O'Sullivan

## NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE

In re: _Freda Kahinda — Applicant_

DATE ~~/ /~~

FILE No.

I hereby enter my appearance as attorney for (or representative of), and at the request of, the following named person(s):

NAME _ATTN: Dorette Stephenson_
_Department of Social Services_

☐ Petitioner  ☒ Beneficiary  ☐ Applicant  ☐

ADDRESS (Apt. No.) (Number & Street) (City) (State) (ZIP Code)
_33 East Merrimac St.  Lowell, MA  01851_

NAME

☐ Petitioner  ☐ Beneficiary  ☐ Applicant  ☐

ADDRESS (Apt. No.) (Number & Street) (City) (State) (ZIP Code)

Check applicable item(s) below:

☒ 1. I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia
_____Massachusetts_____    Supreme Judicial Court

(Name of Court) _____ and am not under a court or administrative agency order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.

☐ 2. I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

☐ 3. I am associated with _____
the attorney of record who previously filed a notice of appearance in this case and my appearance is at his request.   (If you check this item, also check item 1 or 2 whichever is appropriate.)

☒ 4. Others (Explain fully.)
IT IS RESPECTFULLY REQUESTED THAT IN CONFORMITY WITH PUBLIC LAW 90-83, 5 U.S.C. 500(f), 81 stat. 195, THE UNDERSIGNED BE GIVEN NOTICE OF ALL COMMUNICATIONS, WRITTEN OR OTHERWISE, IN THIS CASE.

SIGNATURE

_Maureen O'Sullivan_

NAME (Type or Print)
Maureen O'Sullivan

COMPLETE ADDRESS
Kaplan, O'Sullivan and Friedman, LLP.
10 Winthrop Square, 3rd floor
Boston          MA 02110

TELEPHONE NUMBER
617-482-4500

PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY IMMIGRATION AND NATURALIZATION SERVICE SYSTEM OF RECORDS: _____Maureen O'Sullivan/Monica M. Llano-Olick_____

(Name of Attorney or Representative)

THE ABOVE DISCLOSURE IS IN CONNECTION WITH THE FOLLOWING MATTER:

_FREDA KAHINDIA_
NAME OF PERSON CONSENTING

SIGNATURE OF PERSON CONSENTING

_DORRETTE M. Bogle - Stephenson_

DATE  8/3/0?

(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for permanent residence.)

Form G-28
(Rev. 10-25-79)N          (OVER)          UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

LOWELL JUVENILE COURT
DOCKET NO. CP 02 L 0012

```
                                    )
IN THE MATTER OF THE CARE           )
AND PROTECTION OF:                  )
                                    )
FREDA KAHINDA                       )
DOB 2/2/85                          )
                                    )
```

## ORDER REGARDING MINOR'S ELIGIBILITY FOR
## SPECIAL IMMIGRANT STATUS

Upon consideration of the testimony and/or documents submitted to date, this Honorable Court finds the following:

(1) The minor was declared dependent on 7th day of May 2002 by the Lowell Juvenile Court of the County of Middlesex and was committed to the custody of the Department of Social Services of the Commonwealth of Massachusetts on that date due to abandonment.

(2) On May 7, 2002 the minor was deemed eligible by this Honorable Court for long-term foster care due to the abandonment of the minor, as a result of her biological parents death and lack of kinship in the United States.

(3) This Honorable Court finds that it is not in the best interest of the minor to be returned to her country of nationality and last habitual residence, Uganda, due to the likelihood that she would face genital mutilation and possible physical abuse.

An application is to be made to the Immigration and Naturalization Service pursuant to 8USC Section 1101 (a)(27)(j).

DATED: 5-7-02

_Perry Graver_
Honorable Justice of Lowell Juvenile

I HEREBY CERTIFY THAT THIS DOCUMENT IS
A TRUE COPY OF A DOCUMENT FILED WITH THE
OFFICE OF THE CLERK        RATE OF THIS COURT

_Paul J. Hartnett_

OMB No. 1115-0117

**U.S. Department of Justice**
Immigration and Naturalization Service

Petition for Amerasian, Widow or Special Immigrant

| START HERE - Please Type or Print | FOR INS USE ONLY |
|---|---|

**Part 1. Information about person or organization filing this petition.** (Individuals should use the top name line; organizations should use the second line.) If you are a self-petitioning spouse or child and do not want INS to send notices about this petition to your home, you may show an alternate mailing address here. If you are filing for yourself and do not want to use an alternate mailing address, skip to part 2.

| Family Name | | Given Name | | Middle Initial | |
|---|---|---|---|---|---|

Company or Organization Name: Department of Social Services

Address - C/O: 33 EAST Merrimack ST    C/O Annette Bogul Stephenson

Street Number and Name: Lowell

City: Lowell    State or Province: MA

Country: USA    ZIP/Postal Code: 01852

| U.S. Social Security # | A # | IRS Tax # (if any) |
|---|---|---|

**FOR INS USE ONLY**

Returned _____    Receipt

Resubmitted _____

Reloc Sent _____

Reloc Rec'd _____

☐ Petitioner/ Applicant Interviewed
☐ Beneficiary Interviewed
☐ I-485 Filed Concurrently
☐ Bene "A" File Reviewed
Classification
Consulate
Priority Date
Remarks:

**Part 2. Classification Requested (check one):**

a. ☐ Amerasian
b. ☐ Widow(er) of a U.S. citizen who died within the past 2 years
c. ☒ Special Immigrant Juvenile
d. ☐ Special Immigrant Religious Worker
e. ☐ Special Immigrant based on employment with the Panama Canal Company, Canal Zone, Government or U.S. Government in the Canal Zone
f. ☐ Special Immigrant Physician
g. ☐ Special Immigrant International Organization Employee or family member
h. ☐ Special Immigrant Armed Forces Member
i. ☐ Self-Petitioning Spouse of Abusive U.S. Citizen or Lawful Permanent Resident
j. ☐ Self-Petitioning Child of Abusive U.S. Citizen or Lawful Permanent Resident
k. ☐ Other, Explain:

**Part 3. Information about the person this petition is for.**

| Family Name | Kahinda | Given Name | Freda | Middle Initial | |
|---|---|---|---|---|---|

Address - C/O: 143 Chelmsford ST

Street Number and Name:    Apt. #

City: Lowell    State or Province: MA

Country: USA    ZIP/Postal Code: 01852

Date of Birth (Month/Day/Year): 02/02/85    Country of Birth: UGANDA

| U.S. Social Security # (if any) | A # (if any) |
|---|---|

Marital Status: ☒ Single  ☐ Married  ☐ Divorced  ☐ Widowed

Complete the items below if this person is in the United States:

| Date of Arrival (Month/Day/Year): September 28, 2001 | I-94# 011332815 09 |
|---|---|
| Current Nonimmigrant Status: B2 | Expires on (Month/Day/Year): 3/27/02 |

Action Block

lives w/
foster
mother
Ms. Alexander

To be Completed by Attorney or Representative, if any
☐ Fill in box if G-28 is attached to represent the applicant
VOLAG #

ATTY State License #
BBO MA 640820

Form I-360 (Rev. 03/07/96) N

*Continued on back.*

## Part 4. Processing Information.

Below give the United States Consulate you want notified if this petition is approved and if any requested adjustment of status cannot be granted.

| American Consulate:   City | Country |
|---|---|

If you gave a United States address in Part 3, print the person's foreign address below. If his/her native alphabet does not use Roman letters, print his/her name and foreign address in the native alphabet.

| Name | Address   UGANDA |
|---|---|

Sex of the person this petition is for.  ☐ Male  ☒ Female

| | | |
|---|---|---|
| Are you filing any other petitions or application with this one? | ☐ No | ☒ Yes (How many? _____ ) |
| Is the person this petition is for in exclusion of deportation proceedings? | ☒ No | ☐ Yes (Explain on a separate sheet of paper) |
| Has the person this petition is for ever worked in the U.S. without permission? | ☒ No | ☐ Yes (Explain on a separate sheet of paper) |
| Is an application for adjustment of status attached to this petition? | ☐ No | ☒ Yes |

## Part 5. Complete only if filing for an Amerasian.

Section A.  Information about the mother of the Amerasian.

| Family Name | | Given Name | | Middle Initial |
|---|---|---|---|---|

Living?  ☐ No (Give date of death _____ ) ☐ Yes (Complete address line below)  ☐ Unknown (attach a full explanation)

Address

Section B.  Information about the father of the Amerasian.    If possible, attach a notarized statement from the father regarding parentage.  Explain on separate paper any question you cannot fully answer in the space provided on this form.

| Family Name | | Given Name | | Middle Initial |
|---|---|---|---|---|
| Date of Birth (Month/Day/Year) | | Country of Birth | | |

Living?  ☐ No (Give date of death _____ ) ☐ Yes (Complete address line below)  ☐ Unknown (attach a full explanation)

Home Address

| Home Phone # | Work Phone # |
|---|---|

At the time the Amerasian was conceived:

☐ The father was in the military (indicated branch of service below - and give service number here):
  ☐ Army    ☐ Air Force    ☐ Navy    ☐ Marine Corps    ☐ Coast Guard
☐ The father was a civilian employee abroad. Attach a list of names and addresses of the organizations which employed him at that time.
☐ The father was not in the military, and was not a civilian employed abroad.  *(Attach a full explanation of the circumstances.)*

## Part 6. Complete only if filing for a Special Immigrant Juvenile Court Dependent.

Section A.  Information about the Juvenile.

List any other names used.

Answer the following questions regarding the person this petition is for.  If you answer "no" explain on a separate sheet of paper.

| | | |
|---|---|---|
| Is he or she still dependent upon the juvenile court or still legally committed to or under the custody of an agency or department of a state? | ☐ No | ☒ Yes |
| Does he/she continue to be eligible for long term foster care? | ☐ No | ☒ Yes |

*Continued on next page.*

**Part 7.  Complete only if filing as a Widow/Widower, a Self-petitioning Spouse of an Abuser, or as a Self-petitioning Child of an Abuser**

**Section A. Information about the U.S. citizen husband or wife who died or about the U.S. citizen or lawful permanent resident abuser.**

| Family Name | Given Name | Middle Initial |
|---|---|---|

| Date of Birth (Month/Day/Year) | Country of Birth | Date of Death (Month/Day/Year) |
|---|---|---|

He or she is now, or was at time of death on (check one)

- ☐ U.S. Citizen born in the United States.
- ☐ U.S. Citizen born abroad to U.S. citizen parents.

- ☐ U.S. Citizen through Naturalization  (Show A #)  _____
- ☐ U.S. lawful permanent resident  (Show A #)  _____
- ☐ Other, explain  _____

**Section B. Additional Information about you.**

| How many times have you been married? | How many times was the person in Section A married? | Give the date and place you and person in section A were married. (If you are a self-petitioning child, write: "N/A") |
|---|---|---|

When did you live with the person named in Section A? From (Month/Year) _____ until (Month/Year) _____

If you are filing as a widow/widower, were you legally separated at the time of the U.S. citizens's death? ☐ No   ☐ Yes. (attach explanation).

Give the last address at which you lived together with the person named in Section A, and show the last date you lived together with that person at that address: _____

If you are filing as a self-petitioning spouse, have any of your children filed separate self-petitions? ☐ No  ☐ Yes (show child(ren)'s full names):

**Part 8.  Information about the spouse and children of the person this petition is for.**  A widow/widower or a self-petitioning spouse of an abusive citizen or lawful permanent resident should also list the children of the deceased spouse or of the abuser

| | Family Name | Given Name | Middle Initial | Date of Birth (Month/Day/Year) |
|---|---|---|---|---|
| A. | | | | |
| | Country of Birth | Relationship ☐ Spouse ☐ Child | | A # |
| B. | Family Name | Given Name | Middle Initial | Date of Birth (Month/Day/Year) |
| | Country of Birth | Relationship ☐ Child | | A # |
| C. | Family Name | Given Name | Middle Initial | Date of Birth (Month/Day/Year) |
| | Country of Birth | Relationship ☐ Child | | A # |
| D. | Family Name | Given Name | Middle Initial | Date of Birth (Month/Day/Year) |
| | Country of Birth | Relationship ☐ Child | | A # |
| E. | Family Name | Given Name | Middle Initial | Date of Birth (Month/Day/Year) |
| | Country of Birth | Relationship ☐ Child | | A # |
| F. | Family Name | Given Name | Middle Initial | Date of Birth (Month/Day/Year) |
| | Country of Birth | Relationship ☐ Child | | A # |

Form I-360 (Rev 03/07/96)N

| G. Family Name | Given Name | Middle Initial | Date of Birth (Month/Day/Year) |
|---|---|---|---|
| | | | A # |
| Country of Birth | Relationship ☐ Child | | |

| H. Family Name | Given Name | Middle Initial | Date of Birth (Month/Day/Year) |
|---|---|---|---|
| | | | A # |
| Country of Birth | Relationship ☐ Child | | |

*Read the information on penalties in the instructions before completing this part. If you are going to file this petition at an INS office in the United States, sign below. If you are going to file it at a U.S. consulate or INS office overseas, sign in front of a U.S. INS or consular official.*

## Part 9. Signature.

I certify, or, if outside the United States, I swear or affirm, under penalty of perjury under the laws of the United States of America, that this petition, and the evidence submitted with it, is all true and correct. If filing this on behalf of an organization, I certify that I am empowered to do so by that organization. I authorize the release of any information from my records, or from the petitioning organization's records, which the Immigration and Naturalization Service need to determine eligibility for the benefit being sought.

| Signature | | Date |
|---|---|---|
| X | *Print Name* | 12/10/02 |

Signature of INS or Consular Official

| | Date |

**Please Note:** *If you do not completely fill out this form, or fail to submit required documents listed in the instructions, then the person(s) filed for may not be found eligible for a requested benefit, and it may have to be denied.*

## Part 10. Signature of person preparing form if other than above. (sign below)

I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.

| Signature | Print Your Name    Maureen O'Sullivan/Monica M. L | Date |
|---|---|---|

Firm Name and Address   Kaplan, O'Sullivan and Friedman, LLP. 10 Winthrop Square, 3rd floor, Boston, MA 02110

OMB No. 1115-0053

**U.S. Department of Justice**
Immigration and Naturalization Service

**Form I-485, Application to Register Permanent Residence or Adjust Status**

---

## START HERE - Please Type or Print

### Part 1. Information about you.

| | | |
|---|---|---|
| Family Name **Kahinda** | Given Name **Freda** | Middle Initial |

Address - C/O

Street Number and Name **743   Chelmsford ST**    Apt. #

City **Lowell**

State **MA**    Zip Code **01851**

Date of Birth (month/day/year) **02/02/85**    Country of Birth **UGANDA**

Social Security #    A # (if any)

Date of Last Arrival (month/day/year) **09/28/01**    I-94 # **011332815 09**

Current INS Status **B2 - Expired**    Expires on (month/day/year) **3/27/02**

### Part 2. Application Type.    *(Check one)*

I am applying for adjustment to permanent resident status because

a. ☒ an immigrant petition giving me an immediately available immigrant visa number has been approved. (Attach a copy of the approval notice-- or a relative, special immigrant juvenile, or special immigrant military visa petition filed with this application that will give you an immediately available visa number, if approved.)

b. ☐ My spouse or parent applied for adjustment of status or was granted lawful permanent residence in an immigrant visa category that allows derivative status for spouses and children.

c. ☐ I entered as a K-1 fiance(e) of a U.S. citizen whom I married within 90 days of entry, or I am the K-2 child of such a fiance(e) [Attach a copy of the fiance(e) petition approval notice and the marriage certificate.]

d. ☐ I was granted asylum or derivative asylum status as the spouse or child of a person granted asylum and am eligible for adjustment.

e. ☐ I am a native or citizen of Cuba admitted or paroled into the U.S. after January 1, 1959, and thereafter have been physically present in the U.S. for at least one year.

f. ☐ I am the husband, wife, or minor unmarried child of a Cuban described in (e) and am residing with that person, and was admitted or paroled into the U.S. after January 1, 1959, and thereafter have been physically present in the U.S. for at least on year.

g. ☐ I have continuously resided in the U.S. since before January 1, 1972.

h. ☐ Other basis of eligibility. Explain. (If additional space is needed, use a separate piece of paper.)

_____

_____

I am already a permanent resident and am applying to have the date I was granted permanent residence adjusted to the date I originally arrived in the U.S. as a nonimmigrant or parolee, or as of May 2, 1964, whichever date is later, and:    *(Check one)*

i. ☐ I am a native or citizen of Cuba and meet the description in (e), above.

j. ☐ I am the husband, wife or minor unmarried child of a Cuban, and meet the description in (f), above.

---

### FOR INS USE ONLY

| Returned | Receipt |
|---|---|
| | |
| | |
| **Resubmitted** | |
| | |
| | |
| **Reloc Sent** | |
| | |
| | |
| **Reloc Rec'd** | |
| | |
| | |
| ☐ Applicant Interviewed | |

**Section of Law**

☐ Sec. 209(b), INA
☐ Sec. 13, Act of 9/11/57
☐ Sec. 245, INA
☐ Sec. 249, INA
☐ Sec. 1 Act of 11/2/66
☐ Sec. 2 Act of 11/2/66
☐ Other _____

**Country Chargeable**

**Eligibility Under Sec. 245**

☐ Approved Visa Petition
☐ Dependent of Principal Alien
☐ Special Immigrant
☐ Other _____

**Preference**

**Action Block**

**To Be Completed by Attorney or Representative, if any**

☒ Fill in box if G-28 is attached to represent the applicant

VOLAG# _____
ATTY State License # **MA#380835**

Form I-485 (Rev. 02/07/00)N Page i

*Continued on back.*

## Part 3. Processing Information

**A.** City/Town/Village of Birth    Mulago, Kampala

Current occupation ___

Your mother's first name    Janette

Your father's first name    James

Give your name exactly how it appears on your Arrival/Departure Record (Form I-94)

Kahinda Freda

Place of last entry into the U.S. (City/State)    New York

In what status did you last enter?    *(Visitor, Student, exchange alien, crewman, temporary worker, without inspection, etc.)*

Visitor

Were you inspected by a U.S. Immigration Officer?    ☐ Yes    ☐ No

Nonimmigrant Visa Number

Consulate where Visa was issued    Uganda

Sex:    ☐ Male    ☒ Female

Marital Status    ☐ Married    ☒ Single    ☐ Divorced    ☐ Widowed

Date Visa was issued (month/day/year)

Have you ever before applied for permanent resident status in the U.S.?    ☒ No    ☐ Yes If you checked "Yes," give date and place of filing and final disposition.

**B.** List your present husband/wife, all of your sons and daughters (if you have none, write "none". If additional space is needed, use separate paper).

| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
|---|---|---|---|
| none | | | |
| Country of Birth | Relationship | A # | Applying with you? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with you? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with you? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with you? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with you? ☐ Yes ☐ No |

**C.** List your present and past membership in or affiliation with every political organization, association, fund, foundation, party, club, society, or similar group in the United States or in other places since your 16th birthday. Include any foreign military service in this part. If none, write "none". Include the name(s) of organization(s), location(s), dates of membership from and to, and the nature of the organization(s). If additional space is needed, use a separate piece of paper.

None

## Part 3. Processing Information    *(Continued)*

Please answer the following questions. (If your answer is "Yes" on any one of these questions, explain on a separate piece of paper. Answering "Yes" does not necessarily mean that you are not entitled to register for permanent residence or adjust status).

1. Have you ever, in or outside the U.S.:
   a. knowingly committed any crime of moral turpitude or a drug-related offense for which you have not been arrested? — ☐ Yes  ☒ No
   b. been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations? — ☐ Yes  ☒ No
   c. been the beneficiary of a pardon, amnesty, rehabilitation decree, other act of clemency or similar action? — ☐ Yes  ☒ No
   d. exercised diplomatic immunity to avoid prosecution for a criminal offense in the U.S.? — ☐ Yes  ☒ No

2. Have you received public assistance in the U.S. from any source, including the U.S. government or any state, county, city, or municipality (other than emergency medical treatment), or are you likely to receive public assistance in the future? *DSS* — ☒ Yes  ☐ No
   *Child is in DSS custody*

3. Have you ever:
   a. within the past 10 years been a prostitute or procured anyone for prostitution, or intend to engage in such activities in the future? — ☐ Yes  ☒ No
   b. engaged in any unlawful commercialized vice, including, but not limited to, illegal gambling? — ☐ Yes  ☒ No
   c. knowingly encouraged, induced, assisted, abetted or aided any alien to try to enter the U.S. illegally? — ☐ Yes  ☒ No
   d. illicitly trafficked in any controlled substance, or knowingly assisted, abetted or colluded in the illicit trafficking of any controlled substance? — ☐ Yes  ☒ No

4. Have you ever engaged in, conspired to engage in, or do you intend to engage in, or have you ever solicited membership or funds for, or have you through any means ever assisted or provided any type of material support to, any person or organization that has ever engaged or conspired to engage, in sabotage, kidnapping, political assassination, hijacking, or any other form of terrorist activity? — ☐ Yes  ☒ No

5. Do you intend to engage in the U.S. in:
   a. espionage? — ☐ Yes  ☒ No
   b. any activity a purpose of which is opposition to, or the control or overthrow of, the Government of the United States, by force, violence or other unlawful means? — ☐ Yes  ☒ No
   c. any activity to violate or evade any law prohibiting the export from the United States of goods, technology or sensitive information? — ☐ Yes  ☒ No

6. Have you ever been a member of, or in any way affiliated with, the Communist Party or any other totalitarian party? — ☐ Yes  ☒ No

7. Did you, during the period March 23, 1933 to May 8, 1945, in association with either the Nazi Government of Germany or any organization or government associated or allied with the Nazi Government of Germany, ever order, incite, assist or otherwise participate in the persecution of any person because of race, religion, national origin or political opinion? — ☐ Yes  ☒ No

8. Have you ever engaged in genocide, or otherwise ordered, incited, assisted or otherwise participated in the killing of any person because of race, religion, nationality, ethnic origin, or political opinion? — ☐ Yes  ☒ No

9. Have you ever been deported from the U.S., or removed from the U.S. at government expense, excluded within the past year, or are you now in exclusion or deportation proceedings? — ☐ Yes  ☒ No

10. Are you under a final order of civil penalty for violating section 274C of the Immigration Act for use of fraudulent documents or have you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S., or any other immigration benefit? — ☐ Yes  ☒ No

11. Have you ever left the U.S. to avoid being drafted into the U.S. Armed Forces? — ☐ Yes  ☒ No

12. Have you ever been a J nonimmigrant exchange visitor who was subject to the two-year foreign residence requirement and not yet complied with that requirement or obtained a waiver? — ☐ Yes  ☒ No

13. Are you now withholding custody of a U.S. Citizen child outside the U.S. from a person granted custody of the child? — ☐ Yes  ☒ No

14. Do you plan to practice polygamy in the U.S.? — ☐ Yes  ☒ No

**Part 4.  Signature.**      *(Read the information on penalties in the instructions before completing this section. You must file this application while in the United States.)*

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct. I authorize the release of any information from my records which the INS needs to determine eligibility for the benefit I am seeking.

**Selective Service Registration.  The following applies to you if you are a man at least 18 years old, but not yet 26 years old, who is required to register with the Selective Service System:**  I understand that my filing this adjustment of status application with the Immigration and Naturalization Service authorizes the INS to provide certain registration information to the Selective Service System in accordance with the Military Selective Service Act. Upon INS acceptance of my application, I authorize INS to transmit to the Selective Service System my name, current address, Social Security number, date of birth and the date I filed the application for the purpose of recording my Selective Service registration as of the filing date. If, however, the INS does not accept my application, I further understand that, if so required, I am responsible for registering with the Selective Service by other means, provided I have not yet reached age 26.

| Signature | Print Your Name | Date | Daytime Phone Number |
|---|---|---|---|
| *Kahinda Freda* | KAHINDA FREDA | 08/23/02 | 978-454-0007 |

**Please Note:**   *If you do not completely fill out this form, or fail to submit required documents listed in the instructions, you may not be found eligible for the requested document and this application may be denied.*

**Part 5.  Signature of person preparing form if other than above.**      *(Sign Below)*

I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.

| Signature | Print Your Name | Date | Daytime Phone Number |
|---|---|---|---|
|  | Maureen O'Sullivan |  | 617-482-4500 |

| Firm Name and Address | Kaplan, O'Sullivan & Friedman, LLP |
|---|---|
|  | Ten Winthrop Sq., 3rd Floor, Boston, MA 02110 |

U.S. Department of Justice

Immigration and Naturalization Service

**BIOGRAPHIC INFORMATION**

OMB No. 1115-0066

Approval expires 4-30-85

| (Family name) | (First name) | (Middle name) | ☐ MALE ☒ FEMALE | BIRTHDATE (Mo.-Day-Yr.) 11 2/2/85 | NATIONALITY Ugandan | FILE NUMBER A- |
|---|---|---|---|---|---|---|
| Kahinda | Freda | | | | | |

| ALL OTHER NAMES USED    (Including names by previous marriages) | CITY AND COUNTRY OF BIRTH Ugandan | SOCIAL SECURITY NO. (If any) |
|---|---|---|

| | FAMILY NAME (w) | FIRST NAME | DATE, CITY AND COUNTRY OF BIRTH (If known) | CITY AND COUNTRY OF RESIDENCE |
|---|---|---|---|---|
| FATHER | | | | |
| MOTHER (Maiden name) | Chebeti | James | UGANDA | Deceased |

| | FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | CITY & COUNTRY OF BIRTH | DATE OF MARRIAGE | PLACE OF MARRIAGE |
|---|---|---|---|---|---|---|
| HUSBAND (If none, so state) OR WIFE | Jannate    Chebeti | | | UGANDA | unknown | unknown |

| FORMER HUSBANDS OR WIVES (If none, so state) | | | | |
|---|---|---|---|---|
| FAMILY NAME   (For wife, give maiden name) | FIRST NAME | BIRTHDATE | DATE & PLACE OF MARRIAGE | DATE AND PLACE OF TERMINATION OF MARRIAGE |
| | | | | |

APPLICANT'S RESIDENCE LAST FIVE YEARS, LIST PRESENT ADDRESS FIRST

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| 743 Chelmsford St | Lowell | MA. | USA | 02 | 02 | PRESENT TIME | |
| 240 Jackson St | Lowell | MA | USA | 02 | 02 | 02 | 02/5/02 |
| New York | | | USA | 9/01 | | 02 | 02 |
| Uganda | | | | | | | |

APPLICANT'S LAST ADDRESS OUTSIDE THE UNITED STATES OF MORE THAN ONE YEAR

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| Kampala | | | UGANDA | | | | |

APPLICANT'S EMPLOYMENT LAST FIVE YEARS. (IF NONE, SO STATE.) LIST PRESENT EMPLOYMENT FIRST

| FULL NAME AND ADDRESS OF EMPLOYER | OCCUPATION (SPECIFY) | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|
| None | | | | PRESENT TIME | |
| | | | | | |
| | | | | | |
| | | | | | |

Show below last occupation abroad if not shown above. (Include all information requested above.)

| | | | | | |
|---|---|---|---|---|---|

| THIS FORM IS SUBMITTED IN CONNECTION WITH APPLICATION FOR: | SIGNATURE OF APPLICANT | DATE |
|---|---|---|
| ☐ NATURALIZATION    ☐ OTHER (SPECIFY): ☒ STATUS AS PERMANENT RESIDENT | *Kuhinda Freda* | 8/23/02 |

Are all copies legible?    ☒ Yes

If your native alphabet is other than roman letters, write your name in your native alphabet here:

PENALTIES: SEVERE PENALTIES ARE PROVIDED BY LAW FOR KNOWINGLY AND WILLFULLY FALSIFYING OR CONCEALING A MATERIAL FACT.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# APPLICANT:    BE SURE TO PUT YOUR NAME AND ALIEN REGISTRATION NUMBER IN THE BOX OUTLINED BY HEAVY BORDER BELOW.

| COMPLETE THIS BOX (Family Name) | (Given name) | (Middle name) | (Alien registration number) |
|---|---|---|---|
| KAHINDA | FREDA | | |

Form G-325  (Rev. 10-1-82) Y

**(1) Ident.**



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Social Services
### Lowell Area Office
33 East Merrimack St., Lowell, Massachusetts 01852
Phone: (978) 275-6800 ◆ Fax: (978) 452-5896

JANE SWIFT
Governor
◆
ROBERT P. GITTENS
Secretary
◆
LEWIS H. SPENCE
Commissioner
◆
GAIL MEDEIROS
Area Director

August 14, 2002

## AFFIDAVIT IN SUPPORT OF FEE WAIVER

I, Dorrette M. Bogle-Stephenson, hereby swear the following to be true:

1.   I, Dorrette M. Bogle-Stephenson, am a social worker with the Massachusetts Department of Social Services (33 East Merrimack Street, Lowell, MA.) and am the Department's representative for Freda Kahinda.

2.   Freda Kahinda , age seventeen, had been declared dependent upon the Juvenile Court, committed to the custody of the Department, and deemed eligible for long term care since May 7, 2002.  Freda Kahinda remains indigent.  The case remains open.

Signed under pains and penalties of perjury.

_____
SOCIAL WORKER

Subscribed and sworn to before me this _____26 TH_____ day of _August_ 2002.

NOTARY PUBLIC

John D. Barry
NOTARY PUBLIC
My commission expires: ~~My commission expires May 24, 200~~



PCUGAKAHINDA<<FREDA<<<<<<<<<<<<<<<<<<<<<<<<<<
B289254<<3UGA8502027F0608288020000  0127254<98



STAPLE HERE
Immigration and
Naturalization Service
I-94
Departure Record
14. Family Name
KAHINDA
15. First (Given) Name
FREDA
16. Birth Date (Day/Mo/Yr)
02 02 85
17. Country of Citizenship
UGANDA
U.S. IMMIGRATION
030 NYC 5368
ADMITTED
SEP 28 2001
CLASS
UNTIL
MAR 27 2002
011338815 09
UNITED STATES OF AMERICA
VISA
Issue Date
06SEP2001
Birth Date
02FEB1985
Sex
F

COUNTRIES FOR WHICH THIS PASSPORT IS VALID
PAYS POUR LESQUELS CE PASSEPORT EST VALABLE

ALL COUNTRIES

The validity of this passport expires:
Ce passeport expire le:

28-AUGUST-2006

REPUBLIC OF UGANDA

28 AUG 2001

KAMPALA, UGANDA

PASSPORT

DESCRIPTION · SIGNALEMENT

Profession

Height/Taille

Eyes/Couleur des yeux

Distinguishing marks/Signes particuliers

Holder's signature/Signature du titulaire

N.B. This passport is not valid unless signed by the holder in the space provided above.
Ce passeport n'est valable qu'a été signé par le titulaire à l'endroit réservé à cet effet.

**U. S. Department of Justice**
Immigration and Naturalization Service

OMB No. 1115-0163

**Application for Employment Authorization**

| Do Not Write in This Block | | |
|---|---|---|
| Remarks<br><br>A#<br><br><br>Applicant is filing under §274a.12 | Action Stamp | Fee Stamp |

☐ Application Approved. Employment Authorized / Extended (Circle one)     until _____ (Date).

Subject to the following conditions: _____ (Date).

☐ Application Denied.
　☐ Failed to establish eligibility under 8 CFR 274a.12(a) or (c).
　☐ Failed to establish economic necessity as required in 8 CFR 274a.12(c) (14), (18) and 8 CFR 214.2(f)

I am applying for: ☒ Permission to accept employment
　　　　　　　　 ☐ Replacement (of lost employment authorization document)
　　　　　　　　 ☐ Renewal of my permission to accept employment (attach previous employment authorization document).

1. Name (Family Name in CAPS)　(First)　(Middle)
**Kahinda　Freda**

2. Other Names Used (Include Maiden Name)

3. Address in the United States　(Number and Street)　(Apt. Number)
**743　Chelmsford St**
(Town or City)　(State/Country)　(ZIP Code)
**Lowell　MA.　01851**

4. Country of Citizenship/Nationality
**UGANDA**

5. Place of Birth (Town or City)　(State/Province)　(Country)
**Mulago　Kampala　UGANDA**

6. Date of Birth (Month/Day/Year)　　7. Sex
**21/02/85**　☐ Male　☒ Female

8. Marital Status　☐ Married　☒ Single
　　　　　　　　☐ Widowed　☐ Divorced

9. Social Security Number (Include all Numbers you have ever used)

10. Alien Registration Number (A-Number) or I-94 Number (if any)

11. Have you ever before applied for employment authorization from INS?
☐ Yes (if yes, complete below)　☒ No
Which INS office?　　　　　　　Date(s)

Results (Granted or Denied - attach all documentation)

12. Date of Last Entry into the U.S. (Month/Day/Year)
**09/28/01**

13. Place of Last Entry into the U.S.
**NEW YORK**

14. Manner of Last Entry (Visitor, Student, etc.)
**B2**

15. Current Immigration Status (Visitor, Student, etc.)
**Pending Adjustment Applicant**

16. Go to Part 2 of the instructions, Eligibility Categories. In the space below, place the letter and number of the category you selected from the instructions (For example, (a)(8), (c)(17)(iii), etc.).

Eligibility under 8 CFR 274a.12

**( C ) ( C ) ( 9 )**

## Certification

**Your Certification:**　I certify, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Furthermore, I authorize the release of any information which the Immigration and Naturalization Service needs to determine eligibility for the benefit I am seeking. I have read the instructions in Part 2 and have identified the appropriate eligibility category in Block 16.

Signature　_Kahinda Freda_ DSS　Telephone Number **978-454-0007**　Date **8/23/02**

**Signature of Person Preparing Form if Other Than Above:**　I declare that this document was prepared by me at the request of the applicant and is based on all information of which I have any knowledge.

Print Name　　　Address　　　Signature　　　Date

| Initial Receipt | Resubmitted | Relocated | | Completed | | |
|---|---|---|---|---|---|---|
| | | Rec'd | Sent | Approved | Denied | Returned |
| | | | | | | |

Form I-765 (Rev. 04/28/00)Y





/REDA KAHINDA









# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Social Services

### Lowell Area Office
33 East Merrimack St., Lowell, Massachusetts 01852
Phone: (978) 275-6800  ♦  Fax: (978) 452-5896

**JANE SWIFT**
Governor
•
**ROBERT P. GITTENS**
Secretary
•
**LEWIS H. SPENCE**
Commissioner
•
**GAIL MEDEIROS**
Area Director

**AFFIDAVIT**

Re: Freda Kahinda
DOB: 2/2/85

The Honorable Presiding Justice
Middlesex Juvenile Court
89 Appleton Street
Lowell, MA 01852

I, Nicole Bercovici, being employed by the Department of Social Services, located at 33
E. Merrimack Street, Lowell, MA, hereby say and depose that:

1.  The Department was contacted by the Boston Medical Center, regarding Freda, on
    1/31/02.
2.  Staff from Boston Medical Center reported that Freda immigrated to the United States
    from Uganda and does not have any family in the states.
3.  The Department was informed that Freda's parents are both deceased and that a
    friend assisted Freda in obtaining a temporary VISA and a plane ticket.
4.  Freda met a woman on the plane who reportedly allowed Freda stay with her. This
    woman did not want to become known to the Department and reportedly could not
    continue to care for Freda.
5.  It was reported that Freda's caretaker in Uganda was physically abusive towards her.
    Freda was of age to be genitally mutilated and reportedly left Uganda in order to
    avoid this procedure and to remain safe.
6.  The Department respectfully requests permanent custody of Freda, due to the fact that
    Freda is a minor, has no family and will apparently be at risk for serious harm if she
    were to return to her country.

Signed this fifth day of February, two thousand two, under the pains and penalties of
perjury,

Nicole Bercovici        Karyl Daley        Doreen Hatch        Gail Medeiros
Social Worker           Supervisor         Area Program Manager   Area Director

# EXHIBIT B

# Request for additional evidence dated September 24, 2003.

# DEPARTMENT OF HOMELAND SECURITY
## BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES

NAME OF BENEFICIARY: Kahinda, Freda

FILE NO: A079 680 762

FORM NO. I-485

SEP 2 4 2003

Freda Kahinda
C/o Dorrette Egle Stephenson
33 East Merrimac Street
Lowell Ma 01851

**PLEASE COMPLY WITH THE BELOW CHECKED ☑ INSTRUCTIONS. YOU ARE REQUIRED TO SUBMIT THE FOLLOWING INFORMATION WITHIN 12 WEEKS OR YOUR APPICATION MAY BE DENIED.**

- ☐ 1. The above application/petition and its supporting documents are attached.
- ☐ 2. The above application/petition and its supporting documents have been forwarded to your attorney or representative.
- ☐ 3. Please complete the blocks on your enclosed application/petition, which are checked ☐ in red.
- ☐ 4. Please follow the instructions on your enclosed application/petition, which are checked ☐ in red.
- ☐ 5. Furnish the required fee of $_____.
- ☐ 6. Furnish the birth or baptismal certificate of yourself.
- ☐ 7. Furnish the marriage certificate of _____
- ☐ 8. Furnish proof of death or legal termination of marriage of_____
- ☐ 9. A foreign document must be accompanied by a translation in English. The translator must certify that he/she is competent to translate and that the translation is accurate.
- ☐ 10. Furnish the date and port of each of your entries into the United States and the name of the ship, place, or other vehicle on which you traveled.
- ☐ 11. Except for aliens with occupations listed under Schedule A, 20 Code of Federal Regulations, Part 656.10, a certification from the Secretary of Labor must be obtained before your petition or application may be resubmitted to this Service. Further information and Department of Labor forms and instructions may be obtained from the local office of the state employment service agencies.
- ☐ 12. You have indicated that you do not intend to seek employment. You must furnish evidence that you have sufficient funds or other means of maintaining yourself in this country.
- ☐ 13. Furnish two (2) color photographs. These photos must have a white background, photos must be glossy, unretouched and not mounted. Dimension of the facial image should be about 1 inch from chin to top of hair or head shown in 3/4 frontal view of right side of face with right ear visible. Using soft pencil or felt pen, print name (and alien registration receipt number, if known) on the back of each photograph. You should show these instructions to the photographer who takes the pictures.
- ☐ 14. You may now apply for adjustment of status, on the attached forms, for yourself and below listed persons.
- ☐ 15. Your proof of status documents have been checked and are attached. Your application/petition is being processed and will be completed in the near future.
- ☐ 16. You are required to submit a Medical Examination of Aliens Seeking Adjustment to Status (Form I-693) and Supplement to Form I-693 for documentation of immunizations.
- ☑ 17. A review in the Department of State's Foreign Affairs Manual indicates that death and birth certificates are obtainable from Uganda. Therefore, please provide the death certificates of your parents and a true birth certificate for Freda Kahinda.
- ☑ 18. Please provide an original letter from the court indicating what documents they reviewed to determine that your parents are deceased. The letter must indicate in detail how the court found that you have been neglected, abandoned or abused.

Form I-72

**PLEASE RETURN THIS LETTER AND ALL ATTACHMENTS WITH YOUR RESPONSE**

CC: OSullivan

# EXHIBIT C

# Packet of additional supporting documents delivered to Defendants on December, 2003.

KAPLAN, O'SULLIVAN & FRIEDMAN I I P
ATTORNEYS AT LAW

TEN WINTHROP SQUARE • THIRD FLOOR   BOSTON, N *Please return Original birth Cut in SPC*

HARVEY KAPLAN
MAUREEN O'SULLIVAN
JEREMIAH FRIEDMAN

7) 482-4500
7) 451-6826

JFK Federal Building
Immigration and Naturalization Service, Room I-140
Government Center
Boston, MA 02203

## APPLICATION TO ADJUST TO PERMANENT RESIDENCE STATUS

### Re:  Freda KAHINDA
### A 79 680 762

Dear Officer:

I continue to represent Freda Kahinda regarding her Application for Permanent Residence. You requested the original birth certificate of Ms. Kahinda which is enclosed.

The Department of Social Services has not been successful in their attempts to get the death certificates for Freda's parents. According to reports from Uganda and Freda her parents were murdered and there are no records of their deaths. Our paralegal Renee Cail has spoken with Mr. Kuterebe at the Ugandan Consulate and sent him information regarding Freda in order to obtain death certificates. The Consulate said they can be obtained from family members who survive the horrors of the wars in Uganda and are able to get to the Ministry of Justice and Constitutional Affairs.

Renee has spoken with the Ugandan Consulate on several occasions and they said if you know someone in Uganda it is easier to get death certificates. If you write to the Ugandan Ministry of Justice and Constitutional Affairs it takes several months to get a death certificate. Fortunately, we were able to get a birth certificate from a friend of Freda who knows someone in Uganda.

We are submitting the following documentation:

1.  Freda's original birth certificate (copy)
2.  Letter from the DSS Social Worker to the Ugandan Ministry of Justice & Constitutional Affairs;
3.  Affidavit from Social Worker;
4.  Article on Ugandan Birth and Death Policy

Please approve this case. Thank you kindly for your attention to this matter.

Sincerely,

Maureen O'Sullivan



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Social Services
### Lowell Area Office
33 East Merrimack Street, Lowell, Massachusetts 01852
Phone: (978) 275-6800    ◆    Fax: (978) 452-5896

**MITT ROMNEY**
Governor
◆
**KERRY HEALEY**
Lieutenant Governor
◆
**RONALD PRESTON**
Secretary
◆
**LEWIS H. SPENCE**
Commissioner
◆
**GAIL MEDEIROS**
Area Director

November 12, 2003

Ministry of Justice & Constitutional Affairs
Parliament Ave
Post Office Box 7183
Kampala, Uganda

Re: Kahinda Freda, DOB 2/2/85
Parents: James & Janet Chebet ( Kapchorwa Region).

Dear Sirs,

I am writing this letter on behalf of Kahinda Freda - a citizen of Uganda.

Kahinda Freda arrived in the United States of America in 2001. She needs a birth
certificate and also death certificates of her biological parents.

Freda was in the legal care of the above Department prior to her eighteenth birthday. The
Department is still assisting Freda at this time. The Immigration and Naturalization
Services has requested the above documents.

We would like a response regarding this matter upon receipt of this letter, because the
INS is in need of an immediate response from Kahinda.

Sincerely,

Dofrette M. Bogle-Stephenson
Social Worker



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Social Services
### Lowell Area Office
33 East Merrimack Street, Lowell, Massachusetts 01852
Phone: (978) 275-6800    ◆    Fax: (978) 452-5896

**MITT ROMNEY**
Governor
◆
**KERRY HEALEY**
Lieutenant Governor
◆
**RONALD PRESTON**
Secretary
◆
**LEWIS H. SPENCE**
Commissioner
◆
Doreen Hatch
Acting Area Director

December 10, 2003

## AFFIDAVIT IN SUPPORT OF FREDA KAHINDA

I, Dorrette M. Bogle-Stephenson, hereby swear the following to be true:

1.    I, Dorrette M. Bogle-Stephenson, am a social worker with the Massachusetts Department of Social Services (33 East Merrimack Street, Lowell, MA.) and am the Department's representative for Freda Kahinda.

2.    Freda arrived in the United States on September 28, 2001. Freda reported to the Department that she was assisted by a friend to flee Uganda after being subjected to various forms of abuse. Freda also reported that her parents have been murdered.

3.    I have attempted to obtain a copy of death certificates regarding Freda's parents. I also attempted to obtain a copy of Freda's birth certificate by contacting the Ugandan Ministry of Justice & Constitutional Affairs.

4.    I was able to obtain a birth certificate for Freda with the assistance of a local Ugandan advocate. The Department continues to assist Freda Kahinda. Freda Kahinda remains indigent.

Signed under pains and penalties of perjury.

_____
SOCIAL WORKER

Signed and sworn to before me this ___10___ day of __Dec__ 2003

_____
NOTARY PUBLIC

My commission
expires March 31, 2006



MEMBER LOGIN   TOUR

# *Article Preview*

This article is relevant for your search on "**Kampala Registrar General**".
Read the full article by starting a <u>free trial today</u>. **Find more documents in
our exclusive database by using the search field at the right.**

**BIRTH RECORD POLICY HITS SNAG**
12/18/2002; Africa News Service; Author not available

Birth Record Policy Hits Snag

Kampala, Dec 18, 2002 (New Vision/All Africa Global Media via
COMTEX) -- The revival of Birth and Death Registration (BDR)
that was launched on September 2002 has been stalled by the
failure of the Cabinet to approve its policy.

The Birth Revitalisation (BR) policy developed by the Registrar
General' s Office has yet to be approved by the Cabinet,
according to the 2002 annual review draft report on the five-year
Government and UNICEF programme (CP). The initiative is
supported by UNICEF.

The report said another challenge was that t... **(594 of 1303
Characters)**



Unlimited access to **17 million do**
newspapers, magazines, photogra
maps, encyclopedias & more.

**Got 2 Minutes?**

Take our <u>Quick Tour</u> and see
how eLibrary works for you.

**Try Another Search**

Kampala Registrar Gener.

<u>Advanced search options</u>

**eLibrary Members**

<u>Log in</u> for full article. (<u>Forgot Pass</u>

**Not a Member?** Try us free for se
<u>Get a no-risk free trial</u>.

eLibrary is a service of Alacritude, LLC. Copyright © 2003 . All rights reserved. <u>Terms & Conditions</u> | <u>Privacy Policy</u>
Contact Us: <u>Customer Service</u> | <u>Partner with eLibrary</u> | <u>Become an Affiliate</u>

**DEPARTMENT OF HOMELAND SECURITY**
**BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES**

SEP 2 4 2003

NAME OF BENEFICIARY: **Kahinda,Freda**
FILE NO: A079 680 762
FORM NO.  I-485

Freda Kahinda
C/o Dorrette Bgle Stephenson
33 East Merrimac Street
Lowell Ma 01851

**PLEASE COMPLY WITH THE BELOW CHECKED ☒ INSTRUCTIONS.  YOU ARE REQUIRED TO SUBMIT THE FOLLOWING INFORMATION WITHIN 12 WEEKS OR YOUR APPICATION MAY BE DENIED.**

☐ 1. The above application/petition and its supporting documents are attached.
☐ 2. The above application/petition and its supporting documents have been forwarded to your attorney or representative.
☐ 3. Please complete the blocks on your enclosed application/petition, which are checked ☐ in red.
☐ 4. Please follow the instructions on your enclosed application/petition, which are checked ☐ in red.
☐ 5. Furnish the required fee of $_____
☐ 6. Furnish the birth or baptismal certificate of yourself.
☐ 7. Furnish the marriage certificate of _____.
☐ 8. Furnish proof of death or legal termination of marriage of_____.
☐ 9. A foreign document must be accompanied by a translation in English.  The translator must certify that he/she is competent to translate and that the translation is accurate.
☐ 10. Furnish the date and port of each of your entries into the United States and the name of the ship, place, or other vehicle on which you traveled.
☐ 11. Except for aliens with occupations listed under Schedule A, 20 Code of Federal Regulations, Part 656.10, a certification from the Secretary of Labor must be obtained before your petition or application may be resubmitted to this Service.  Further information and Department of Labor forms and instructions may be obtained from the local office of the state employment service agencies.
☐ 12. You have indicated that you do not intend to seek employment.  You must furnish evidence that you have sufficient funds or other means of maintaining yourself in this country.
☐ 13. Furnish two (2) color photographs.  These photos must have a white background, photos must be glossy, un-retouched and not mounted.  Dimension of the facial image should be about 1 inch from chin to top of hair or head shown in 3/4 frontal view of right side of face with right ear visible.  Using soft pencil or felt pen, print name (and alien registration receipt number, if known) on the back of each photograph.  You should show these instructions to the photographer who takes the pictures.
☐ 14. You may now apply for adjustment of status, on the attached forms, for yourself and below listed persons.
☐ 15. Your proof of status documents have been checked and are attached.  Your application/petition is being processed and will be completed in the near future.
☐ 16. You are required to submit a Medical Examination of Aliens Seeking Adjustment to Status (Form I-693) and Supplement to Form I-693 for documentation of immunizations.
☑ 17. A review in the Department of State's Foreign Affairs Manual indicates that death and birth certificates are obtainable from Uganda.  Therefore, please provide the death certificates of your parents and a true birth certificate for Freda Kahinda.
☑ 18.  Please provide an original letter from the court indicating what documents they reviewed to determine that your parents are deceased.  The letter must indicate in detail how the court found that you have been neglected, abandoned or abused.

Form I-72      **PLEASE RETURN THIS LETTER AND ALL ATTACHMENTS**
**WITH YOUR RESPONSE**

CC: OSullivan

# DEPARTMENT OF HOMELAND SECURITY
## BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES

NAME OF BENEFICIARY: **Kahinda, Freda**
FILE NO: **A079 680 762**
FORM NO. **I-485**

~EP 2 4 2003

Freda Kahinda
C/o Dorrette Bgle Stephenson
33 East Merrimac Street
Lowell Ma 01851

**PLEASE COMPLY WITH THE BELOW CHECKED ☐ INSTRUCTIONS.  YOU ARE REQUIRED TO SUBMIT THE FOLLOWING INFORMATION WITHIN 12 WEEKS OR YOUR APPICATION MAY BE DENIED.**

☐ 1. The above application/petition and its supporting documents are attached.
☐ 2. The above application/petition and its supporting documents have been forwarded to your attorney or representative.
☐ 3. Please complete the blocks on your enclosed application/petition, which are checked ☐ in red.
☐ 4. Please follow the instructions on your enclosed application/petition, which are checked ☐ in red.
☐ 5. Furnish the required fee of $ _____
☐ 6. Furnish the birth or baptismal certificate of yourself.
☐ 7. Furnish the marriage certificate of _____
☐ 8. Furnish proof of death or legal termination of marriage of _____
☐ 9. A foreign document must be accompanied by a translation in English.  The translator must certify that he/she is competent to translate and that the translation is accurate.
☐ 10. Furnish the date and port of each of your entries into the United States and the name of the ship, place, or other vehicle on which you traveled.
☐ 11. Except for aliens with occupations listed under Schedule A, 20 Code of Federal Regulations, Part 656.10, a certification from the Secretary of Labor must be obtained before your petition or application may be resubmitted to this Service.  Further information and Department of Labor forms and instructions may be obtained from the local office of the state employment service agencies.
☐ 12. You have indicated that you do not intend to seek employment.  You must furnish evidence that you have sufficient funds or other means of maintaining yourself in this country.
☐ 13. Furnish two (2) color photographs.  These photos must have a white background, photos must be glossy, un-retouched and not mounted.  Dimension of the facial image should be about 1 inch from chin to top of hair or head shown in 3/4 frontal view of right side of face with right ear visible.  Using soft pencil or felt pen, print name (and alien registration receipt number, if known) on the back of each photograph.  You should show these instructions to the photographer who takes the pictures.
☐ 14. You may now apply for adjustment of status, on the attached forms, for yourself and below listed persons.
☐ 15. Your proof of status documents have been checked and are attached.  Your application/petition is being processed and will be completed in the near future.
☐ 16. You are required to submit a Medical Examination of Aliens Seeking Adjustment to Status (Form I-693) and Supplement to Form I-693 for documentation of immunizations.
☑ 17. A review in the Department of State's Foreign Affairs Manual indicates that death and birth certificates are obtainable from Uganda.  Therefore, please provide the death certificates of your parents and a true birth certificate for Freda Kahinda.
☑ 18.  Please provide an original letter from the court indicating what documents they reviewed to determine that your parents are deceased.  The letter must indicate in detail how the court found that you have been neglected, abandoned or abused.

Form I-72                    **PLEASE RETURN THIS LETTER AND ALL ATTACHMENTS**
**WITH YOUR RESPONSE**

CC: O'Sullivan

KAMPALA

A 25012

Page.........................

Birth in the Sub-County of........ KAWEMPE ........ County of........ KYADONDO ........ in the District of........ KAMPALA ........ Province of........ CENTRAL ........ in the Republic of Uganda.

| No. | Date of Birth and Time of Birth | Place of Birth | Name | Sex | Full Name, Residence and Occupation of Father | Full Name and Maiden Name, Residence and Occupation of Mother | Nationality of Parents | Full Name, Occupation and Residence of Declarant in what capacity he gives information | When Registered | Signature of Sub-County Chief | Name if added after Registration of Birth |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3612 | 2-2-85 | MULAGO | KAHINDA FRED | FEMALE | JAMES CHEBET KAPCHMORWA PARMER. | CHEBET JANETTE KAPCHMORWA, PARMER. | UGANDANS | JAMES CHEBET PARMER, AS FATHER. | 3.9.2003 | A.AMANIFA | |

I, OYUKO ANTHONY OJOK ........ the Registrar-General of Births and Deaths for Uganda, do hereby certify that this is a true copy of the return/register of births for the Birth Registration District of the Sub-County of ........ KAWEMPE ........ County of ........ KYADONDO ........ Province of ........ CENTRAL ........ relating to the birth of ........ KAHINDA FRED D/O. JAMES. CHEBET.

WITNESS my hand at Kampala this ........ 5TH ........ day of ........ SEPTEMBER ........ 20.03 ....

OYUKO ANTHONY OJOK CHEBET.

ASST. Registrar-General of Births and Deaths

Fee: Shs. 200

Printed by Uganda Printing and Publishing Corporation

11/11/04

TC to Jean Radosta,

11/10/04 - DSS COMMENT SHEET

Freda Rakenda.

11/3/04 - Jean Radosta regarding
Freda coming to KOH.
Tel: 978-275-6873

11/5/04 - Freda called to state she
will be a few minutes late.

11/5/04 Freda came to H.W. with
Jean Radosta (DSS wkr. Heidi
therapist)

Freda's numbers
(cell) 978-420-9117
(h.) 413-546-3687

11/5/04 - Heidi Ellis -
11/9 -
11/10/04 - Letter from Heidi

11/12/04 - TC to Heidi She
make corrections and send
the copy

# EXHIBIT D

**Letter from Plaintiffs, DSS Commissioner, to Defendant requesting adjudication of long delayed cases with attached list that includes Freda Kahinda's case, September 27, 2004.**



The Commonwealth of Massachusetts
Executive Office of Health and Human Services
**Department of Social Services**
24 Farnsworth Street, Boston, Massachusetts 02210
Tel (617) 748-2000 ◆ Fax (617) 261-7435

MITT ROMNEY
Governor
◆
KERRY HEALEY
Lieutenant Governor
◆
RONALD PRESTON
Secretary
◆
LEWIS H. SPENCE
Commissioner

September 27, 2004

Denis Riordan, District Director
U.S. Citizenship and Immigration Services
Department of Homeland Security
John F. Kennedy Federal Building
Government Center
Boston, MA  02203

Re:  Special Immigrant Juveniles

Dear Mr. Riordan:

I am writing to request your assistance with resolving an issue that is of critical importance to the Massachusetts Department of Social Services and the immigrant children in our custody.

As I believe you know, we regularly file petitions for special immigrant status and applications for adjustment of status for foreign born children who are in our custody. These I-360/I-485 applications are filed with your office and handled by the Examinations Section.

I have attached a list of pending applications which have yet to be adjudicated. As you can see, many of these children were interviewed over a year ago. One of the children was interviewed in 2001. Another child will be 21 in December. In some cases, we were asked to provide additional documentation and we have done so. Some of the children will need new fingerprints if they are not decided promptly and will require our workers to accompany them through the process once again.

I am asking for your assistance because these delays cause real hardships for the children at issue and severely tax the limited resources within our offices. We struggle to provide the best services possible in a challenging environment. We try to do so in an expeditious manner, not only because federal child welfare law requires it, but because it is appropriate to be mindful of a child's sense of time.

Rest assured, we carefully review the circumstances of immigrant children in our custody and support I-485/I-360 petitions/applications only when we believe that the children at issue meet eligibility criteria as special immigrant juveniles. We have modified our procedures to try to provide your officers with everything they need by the time of the interview. We provide detailed documentation of the circumstances of abuse, neglect or abandonment which caused us to take custody. We are willing to do whatever we can on our end to give you what you need to make final decisions in a timely manner.

I would appreciate your assistance in resolving these cases as soon as possible. I invite your suggestions as to what we can do going forward to work together to resolve any issues that are causing delays. We would welcome an opportunity to meet with you and your staff for an information session during which we could share information regarding agency procedures and answer any questions you may have about our agency. If you would like to arrange such a meeting, please call our Deputy General Counsel, Dianne Curran at 617-748-2020. You may also feel free to contact Attorney Maureen O'Sullivan, who is handling the I-360/I-485 applications now before you and she will follow up with us.

Thank you for your consideration.

Sincerely,

Lewis H. Spence
Commissioner

Cc:    Dianne Curran, Esq.
       Maureen O'Sullivan, Esq.

**KAP'  N, O'SULLIVAN & FRIEDMAN,  LP**

Attorneys At Law

Ten Winthrop Square • Third Floor, Boston, Massachusetts 02110
E-Mail: info@kof-law.com • *www.kof-law.com*

Tel: (617) 482-4500
Fax: (617) 451-6828
Fax: (617) 451-6826

Harvey Kaplan
Maureen O'Sullivan
Jeremiah Friedman

## DSS CASES TO BE ADJUDICATED

To:     Ms. Myra Strauss
From:   Maureen O'Sullivan
Re:     Special Immigrant Juvenile
Date:   September 22, 2004

| Name | DOB | A# | Date of Interview |
|------|-----|-----|-------------------|
| Peter Francois | 07/15/1984 | 78 629 893 | 10/02/2001 |
| Yan Luz | 05/10/1986 | 79 678 888 | 04/22/2003 |
| Nancy Guerrier*** | 12/05/1983 | 79 678 852 | 05/19/2003 |
| Freda Kahinda | 02/02/1985 | 79 680 762 | 05/19/2003 |
| Carlos Chinchilla | 05/16/1984 | 79 679 434 | 05/22/2003 |
| Margaret Bukenya | 08/15/1986 | 79 679 221 | 06/18/2003 |
| Ramon Torres | 03/15/1986 | 44 731 017 | 09/02/2003 |
| Mary Ajede | 05/05/1984 | 76 002 201 | 07/01/2003 |
| Filemon Cruz | 11/07/1984 | 96 407 997 | 12/10/2003 |
| Andres F. Garcia | 11/19/1984 | 96 409 328 | 02/17/2004 |
| Christelle Aka | 03/05/1986 | 96 409 327 | 02/17/2004 |

## ***Please note: Nancy Guerrier will turn 21 on December 5, 2004.

# EXHIBIT E

**Defendant's notice of intent to deny this case, October 14, 2004.**

*Boston District Office*

**U.S. Department of Homeland Security**
JFK Federal Building Government Center
Boston, MA 02213



**U.S. Citizenship
and Immigration
Services**

*Please Refer To This File Number: A079 680 762*

OCT 1 4 2004

Freda Kahinda
C/o Dorrette M. Bogle- Stephenson
33 East Merrimac Street
Lowell Ma 01851

### NOTICE OF INTENT TO DENY VISA PETITION

Reference is made to the Petition for Special Immigrant filed at Boston, Massachusetts on January 22, 2003, under the provisions of Section 203 (4) of the Immigration and Nationality Act. As a special immigrant juvenile as described in Section 101(a)(27)(J)(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment.

A review of the record reveals that you entered the United States at New York, NY on September 28, 2001 at the age of 16 years old. You entered on a visitor visa issued to you in Kampala on September 06, 2001.

On May 19, 2003, you appeared at an interview with counsel and a social worker for the Department of Social Services for the Commonwealth of Massachusetts. You testified your parents are deceased. You testified your parents died when you were six years old. You testified you have two sisters but you have "not ever seen them." You testified you went to live with your aunt who abused you. This was your fathers' sister. You testified you ran away from your aunt when you were 11 years old. You testified in order to "survive" you prostituted for "one day". You testified you were helped by a man named "Baen Katongore" to obtain the above-cited visitor visa. A review of computer files reveal that your intended address upon entry at New York was the Embassy of Uganda in Washington DC. You testified you did not go to Washington. You testified you met a "woman" on the plane. You testified you do not remember the "woman's" name. You testified you lived with this woman in New York. You testified the woman traveled "too much and abandoned you." You testified you then went to the Department of Social Services.

The interviewing officer handed you Form I-72 a request for you to submit additional documents. The request indicated for you to submit an original birth certificate of yourself along with original death certificates of your parents. The request also stated for you to provide a letter from the court that indicated how the court deemed you to be eligible for long-term foster care due to abandonment. You were requested to submit documents that you would have presented to the court reflecting your parents to be deceased. You were given 12 weeks to submit the above. You failed to provide the above within the 12 week period.

On December 18, 2003, the attorney of record submitted a letter indicating that "according to reports from Uganda and Freda" your parents were murdered and there are "no records of their death." The attorney of record does not indicate what reports from Uganda she is referring to. The Department of State's Foreign Affairs manual indicates death and birth certificates are obtainable. The manual further states that registration of deaths has become compulsory for all Ugandans. On December 18, 2003, you submitted an original birth certificate of yourself. The birth certificate contradicts your above testimony.

E

The birth certificate indicates the registration of your birth was not until September 03, 2003. It appears the "declarant" who gives the information to be James Chwebet, your father. The birth certificate also reveals your parents to be farmers. It is unclear what birth document you presented to the Department of State in Kampala for them to issue you a visitor visa. It is also unclear how your father was the "declarant" since he according to your testimony is deceased.

**Matter of Brantigan**, 13 I&N Dec 493 (BIA 1966), states that the burden of proof to establish eligibility for the benefit sought lies with the petitioner. Your answers to several questions regarding the death of your parents were vague. You failed to submit the required documentation to render a favorable decision on your case.

Please be advised that you have eighteen (18) days from the date of this letter to respond to the above allegations and to present any additional evidence, which in your opinion will justify a reconsideration of this determination. Included in your response should be a reasonable explanation. At the end of that time, a decision will be made with the information available.

Sincerely,

Denis C. Riordan
District Director

cc:    Maureen O'Sullivan
       Ten Winthrop Square Third Floor
       Boston Ma 02110

# EXHIBIT F

# Plaintiffs response to notice of intent to deny, November 23, 2004.

**KAPLAN, O'SULLIVAN & FRIEDMAN, LLP**
Attorneys At Law

Ten Winthrop Square • Third Floor, Boston, Massachusetts 02110
E-Mail: info@kof-law.com • *www.kof-law.com*

Harvey Kaplan
Maureen O'Sullivan
Jeremiah Friedman

Tel: (617) 482-4500
Fax: (617) 451-6828
Fax: (617) 451-6826

November 23, 2004

Dennis Riordan
District Director
Boston District Office
U.S. Department of Homeland Security
USCIS
15 New Sudbury St.
JFK Federal Building
Boston, MA 02203

Re:     **Beneficiary- Freda Kahinda , A79 680 762**
        **Petitioner-Department of Social Services**
        **Response to Notice of Intent to Deny Visa Petition**

Dear Mr. Riordan:

On October 14, 2004, you issued a notice of intent to deny the visa petition filed by the Department of Social Services to accord special immigrant juvenile status to Freda Kahinda. Thereafter we requested an extension and you granted a 30 day extension until November 24, 2004.

In your notice of intent to deny you questioned Freda's birth certificate and the fact that Freda's answer regarding the death of her parents was vague.

In response to your notice of intent to deny we have enclosed the following:

1.     Letter from B. Heidi Ellis, PhD. Dr. Ellis is a licenced Clinical Psychologist and Associate Director for the Center for Medical and Refugee Trauma at Boston Medical Center, Department of Child and Adolescent Psychiatry. As you can see from her enclosed affidavit, she has worked as Freda's therapist for the past three years. She explains in her affidavit why she believes that Freda in fact believes her parents to have been killed when she was six years old and why Freda's information about the details of their death may be vague or even inaccurate. Nevertheless, she vouches for Freda's truthfulness by explaining that she has worked for the past three years with Freda on the issue of her grief for her deceased parents. Please note that Dr. Ellis's relationship with Freda and her work with Freda precedes Freda's application for special immigrant juvenile status. Therefore, this tends to show that Freda's story is true and is not something manufactured for the purpose of an application for special immigrant juvenile status.

2.    In addition we have submitted a letter from Anita T. Marshall a licensed social worker at Casey Family Services. She works with the Department of Social Services in providing appropriate foster placement for Freda as well as assessing her emotional and mental health state. Ms. Marshall also explains that she has known Freda for the past 2 and a half years and has seen her progress from a child who was experiencing serve symptoms of post traumatic stress to one of their most outstanding youths who has developed a close and loving relationship with her foster mother. She explains that Freda is a wonderful artist, having used her art as a form of therapeutic healing. Again, Ms. Marshall's letter vouches for the consistency of Freda's story that her parents are deceased and that she lived with an abusive aunt from whom she escaped.

3.    In response to the request from the Immigration Service, Freda requested her birth certificate from Uganda. She requested this through the help of a friend, a man from Uganda who was also known to one of the social workers. That individual contacted other people that he knew at the Malago Hosptial where Freda was born and this is how they obtained the death certificate. Your notice questioned the fact that the death certificate indicates that the declarant was James Chwebet, who is Freda's father and that this certificate was issued long after Mr. Chwebet himself had died.

We have enclosed a letter from the Ugandan Embassy which authenticates Freda's birth certificate. We contacted the Embassy of Uganda in Washington, D.C. The Ugandan Consular Officer explained: " It is highly likely that Ms. Kahinda's father signed her hospital record of birth as the "declarant" and that this information was later transferred to her birth certificate. The document mistakenly does not identify Ms. Kahinda's father as "deceased". However this should not be taken as evidence that her father obtained the birth certificate."

4.    Also enclosed is an updated Voluntary Placement Agreement which shows that Freda continues to be in DSS custody.

As the enclosed documentation indicates for all intents and purposes, Freda's parents are dead and have been lost to her since she was at least six years old. Since she was so young when this happened it is natural that she would not know details or be in a position to know the details about exactly how her birth certificate was obtained or how the information was given to obtain it. I ask you consider the purpose of the special immigrant juvenile legislation in that it is designed to help children who have been abused, neglected or abandoned by the natural parents.

The standards in special immigrant juvenile cases are set forth in Section 101 (a)(27)(J) of the Immigration and Nationality Act. That defines special immigrant juveniles as "juveniles deemed eligible for long term foster care based on abuse, neglect or abandonment". The regulations further

provide that eligible for long term foster care means "a determination has been made by the Juvenile Court the family reunification is no longer a viable option." 8 CFR 204.11 (a).

The standards for adjudicating special immigrant juvenile petitions are set forth in some detail in a memorandum from USCIS headquarters published by William R. Yates on May 27, 2004. That memorandum indicates that all special immigrant juvenile cases must be supported by a court order which establishes the three statutory criteria 1) that the child has been declared dependant on the Juvenile Court and placed in state custody, 2) that the child has been deemed eligible for long term foster care based on abuse, neglect or abandonment and 3) that there must be a finding that it would not be in the child's best interest to return to his or her home country or that of the parent.

I believe that the court order adequately meets all three criteria. The order explains that Freda was deemed eligible for long term foster care due to abandonment, through the death of her biological parents. The court further states that it is not in her best interest to be returned to Uganda "due to the likelihood that she would face genital mutilation and possible physical abuse."
Mr. Yates memorandum , described above states " the adjudicator generally should not second guess the court rulings or question whether the court's order was properly issued. Such findings need not be overly detailed but must reflect that the Juvenile Court made an informed decision."

In summary, this is a child who lost both parents at the age of six. She believes they were killed because they tried to protect their daughters from Female Genital Mutilation. Freda also lost her sisters in that she was permanently separated from them at the age of six. Then she was physically abused by her aunt, raped by soldiers and ran away. Thanks to years of therapy, assistance by DSS, and a loving foster mother, she is now thriving.  She is a student at the University of Massachusetts and a gifted artist. She worked hard to overcome tremendous adversity.

Taking into consideration the enclosed evidence, I believe that Freda and the Department of Social Services have shown that she meets the criteria for statutory eligibility for special immigrant juvenile status. Therefore please approve the petition which DSS filed on her behalf.

Thank you very much.

Sincerely yours ,

Maureen O'Sullivan
MOS:wo
Enclosures
cc: Dianne Curran, Deputy General Counsel, DSS

**U.S. Department of Homeland Security**
John F. Kennedy Federal Building
Government Center
Boston, MA  02203



**U.S. Citizenship
and Immigration
Services**

October 25, 2004

A79 679 221
A96 407 997
A79 680 762

Maureen O'Sullivan, Esquire
Ten Winthrop Square, 3rd Floor
Boston, MA  02110

Dear Ms. O' Sullivan:

I refer to your letters of October 20th in which you request extensions of time to respond to
the notices of intent to deny for three special immigrant juvenile petitions. The file numbers
are listed above.

Please be advised that you are granted thirty (30) days from the date of this correspondence to
Reply to the notices of intent.  At the end of the thirty-day period, decisions will be made with the
information available.

Sincerely,

Denis C. Riordan
District Director

*Boston District Office*

**U.S. Department of Homeland Security**
JFK Federal Building Government Center
Boston, MA 02213



**U.S. Citizenship
and Immigration
Services**

*Please Refer To This File Number: A079 680 762*

OCT 1 4 2004

Freda Kahinda
C/o Dorrette M. Bogle- Stephenson
33 East Merrimac Street
Lowell Ma 01851

## NOTICE OF INTENT TO DENY VISA PETITION

Reference is made to the Petition for Special Immigrant filed at Boston, Massachusetts on January 22, 2003, under the provisions of Section 203 (4) of the Immigration and Nationality Act. As a special immigrant juvenile as described in Section 101(a)(27)(J)(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment.

A review of the record reveals that you entered the United States at New York, NY on September 28, 2001 at the age of 16 years old. You entered on a visitor visa issued to you in Kampala on September 06, 2001.

On May 19, 2003, you appeared at an interview with counsel and a social worker for the Department of Social Services for the Commonwealth of Massachusetts. You testified your parents are deceased. You testified your parents died when you were six years old. You testified you have two sisters but you have "not ever seen them." You testified you went to live with your aunt when you were 11 years old. You testified in order to "survive" you testified you ran away from your aunt when you were 11 years old. You testified in order to "survive" you prostituted for "one day". You testified you were helped by a man named "Baen Katongore" to obtain the above-cited visitor visa. A review of computer files reveal that your intended address upon entry at New York was the Embassy of Uganda in Washington DC. You testified you did not go to Washington. You testified you met a "woman" on the plane. You testified you do not remember the "woman's" name. You testified you lived with this woman in New York. You testified the woman traveled "too much and abandoned you." You testified you then went to the Department of Social Services.

The interviewing officer handed you Form I-72 a request for you to submit additional documents. The request indicated for you to submit an original birth certificate of yourself along with original death certificates of your parents. The request also stated for you to provide a letter from the court that indicated how the court deemed you to be eligible for long-term foster care due to abandonment. You were requested to submit documents that you would have presented to the court reflecting your parents to be deceased. You were given 12 weeks to submit the above. You failed to provide the above within the 12 week period.

On December 18, 2003, the attorney of record submitted a letter indicating that "according to reports from Uganda and Freda" your parents were murdered and there are "no records of their death." The attorney of record does not indicate what reports from Uganda she is referring to. The Department of State's Foreign Affairs manual indicates death and birth certificates are obtainable. The manual further states that registration of deaths has become compulsory for all Ugandans. On December 18, 2003, you submitted an original birth certificate of yourself. The birth certificate contradicts your above testimony.

The birth certificate indicates the registration of your birth was not until September 03, 2003. It appears the "declarant" who gives the information to be James Chwebet, your father. The birth certificate also reveals your parents to be farmers. It is unclear what birth document you presented to the Department of State in Kampala for them to issue you a visitor visa. It is also unclear how your father was the "declarant" since he according to your testimony is deceased.

**Matter of Brantigan**, 13 I&N Dec 493 (BIA 1966), states that the burden of proof to establish eligibility for the benefit sought lies with the petitioner. Your answers to several questions regarding the death of your parents were vague. You failed to submit the required documentation to render a favorable decision on your case.

Please be advised that you have eighteen (18) days from the date of this letter to respond to the above allegations and to present any additional evidence, which in your opinion will justify a reconsideration of this determination. Included in your response should be a reasonable explanation. At the end of that time, a decision will be made with the information available.

Sincerely,

Denis C. Riordan
District Director

cc:    Maureen O'Sullivan
       Ten Winthrop Square Third Floor
       Boston Ma 02110



One Boston Medical Center Place
Boston, MA  02118-2393
Tel: 617 638 8000
Tel: 617 414 5000

Mr. Denis Riordan
U.S. Department of Homeland Security
JFK Federal Building Government Center
Boston MA 02213

November10, 2004

Dear Denis Riordan,

I am writing on behalf of Freda Kahinda, D.O.B. 2/2/85. I am the associate director of
the Center for Medical and Refugee Trauma, Boston Medical Center, and a licensed
clinical psychologist. I have been the therapist for Freda for the past 3 years. My
specialty is caring for child and adolescent survivors of trauma and refugees. As such, I
have had experience evaluating and treating children and adolescents from different
cultures, and who present with symptoms related to trauma and adversity.

I am writing in regards to your recent letter of Oct. 14, 2004. This later states an
intention to deny Freda's visa petition. The grounds for this denial appear to be related to
the following reasons:

1.  Disbelief of Freda's statement that she believes her parents to be dead.
2.  Concern that Freda's recollection for specific events seems vague or difficult to
    believe.

I have been Freda's therapist since January of 2002. Based on my clinical expertise, I am
convinced that Freda truly believes her parents to be dead, and that the story she tells of
her childhood and journey to the US is true, as she understands it. Following is a more
detailed explanation of clinical evidence supporting the above assertions.

During the 35 months that I have worked with Freda, her description of the events of her
history have been consistent. Her psychological presentation also has been consistent
with the story that she has described. The story that she has shared with me, as she has
revealed throughout the course of therapy, is summarized below.

According to Freda, her parents were killed when she was 6 years of age. She states that
her understanding of why they were killed is that they opposed female genital mutilation,
a common practice in their village. She further stated that her parents had protected

Boston Medical Center
Boston University School of Medicine
Boston University School of Public Health
Boston University Henry M. Goldman School of Dental Medicine

Freda's two older sisters from this procedure, and that this led to members of the village murdering her parents. Freda stated that she was then taken to live with her aunt. She stated her aunt was abusive, and showed me several scars. She further described being raped by soldiers, and later running away. She stated she ran away to the city, where she met several women who worked in prostitution and who offered that she could stay with them if she worked with them. Freda described in detail how the women had dressed her up and attempted to make her look older. She stated that on the first evening she was picked up by a man who harbored her for several years. She stated this man helped her come to the US.

This history was revealed in a manner that is consistent with my experience working with other traumatized children. She was frequently very tearful and had some difficulty talking about certain elements of her story, but over time grew more comfortable talking about these details and less tearful. This is consistent with the presentation of other traumatized youth with whom I have worked. As our relationship is therapeutic, I see no potential secondary gain that might lead to someone fabricating a story in this context. Furthermore, she revealed this story to me long before she petitioned for a visa or was even aware that she could petition for a visa.

*Psychological presentation related to veracity of loss of parents*
Over the course of the past 35 months Ms. Kahinda has revisited different parts of her history as they have become relevant to psychological treatment. Never during this period of time did Ms. Kahinda ever say anything inconsistent with her initial statement that her parents were dead. Ms. Kahinda expressed feelings of loss that were developmentally appropriate for an adolescent who had lost her parents at a young age. For instance, Ms. Kahinda discussed feelings of sadness that she could not remember what they looked like, and expressed jealously when college classmates were able to call their parents for support. She further has described nightmares in which she sees her parents murdered; the content of these nightmares is consistent with what one would expect from someone who suffered the trauma and loss of their parent's murder.

Ms. Kahinda has also talked very longingly about wishing she knew more about her parents. She expresses sadness at the fact that she *does not know* her parents, an affect that is notably different from someone who has clear memories of parents and misses specific things about them. Again, this is developmentally appropriate for someone who lost their parents at six years of age. She at times has related small pieces of information or opinions that various people in the village shared with her about what her parents were like, or ways in which she was like her parents. The content of these discussions is again consistent with her story that her parents have been dead since she was very young.

Freda has also poignantly described memories of her childhood experience of losing her parents. She related that when she was a young girl someone in the village had told her that if she went and sat by the well where her parents had bathed, that she would see their spirits. Freda described that during that time she had gone to the well everyday, sitting for long periods of time, and waiting for them to come. She stated that one day she

became ill from sitting so long in the heat and so stopped going. This story describes the magical thinking that frequently characterizes young children, and is consistent with what might be expected of a 6-year-old child who had lost her parents.

*Psychological presentation related to vagueness and credibility of story*
The letter stating the intent to deny Freda's petition for visa also appears to be concerned with credibility of Freda's story due to some areas of vagueness. Specifically, there appear to be questions regarding Freda's testimony that she has two sisters but she has never seen them. According to Freda's story, her parents were killed and she herself was removed and placed in the care of an aunt at the age of 6. Thus Freda would not have seen her siblings since the age of 6 years. Developmentally, it is not unusual that a child who saw people only during the early years of their life would not have declarative memories of spending time with them. In a case in which there are no photographs and no parents to assist the child in rehearsing memories of events during the early years, it is even more likely that these early childhood events would not remain in declarative memory. Thus Freda's testimony that she has never seen her two sisters quite likely reflects her lack of memories of them, and is true to the extent that she remembers.

The letter further appears concerned with the vagueness related to Freda's arrival in the US, when Freda lived with a woman she met on the plane but could not remember her name. I began working with Freda approximately 2.5 months after her arrival in the US, thus around the time that these events had actually taken place. During this period of her life, Freda was acutely symptomatic and suffering from Posttraumatic Stress Disorder and Major Depressive Disorder. Freda reported hardly sleeping. She also was flooded with intrusive memories of traumatic events of the past.

Given Freda's severe mental illness at this time in her life, it is quite likely that she does not remember details of who she was living with. Clinically, severe symptomatology such as I witnessed in Freda during January of 2002 is often related to genuine confusion regarding where one is, and what is happening. Long after recovery from an acute mental illness, patients often have difficulty recalling details and ordering events that occurred during the time of illness. I believe Freda is telling the truth to the best of her abilities regarding the details of her arrival in the United States, but that it is quite likely she does not remember specifics and may even not have had clarity regarding what was happening to her at the time.

In summary, the psychological presentation that I have observed over the past 35 months is consistent with Freda's story. I also believe that it is exceedingly unlikely that an adolescent would show the same symptom profile (sense of loss, content of nightmares, childhood memories and current experiences that incorporate developmentally expected responses to loss) if it were not indeed true that she had lost her parents at an early age.

At present, Freda is performing well at school, creating beautiful artwork, and being a very positive member of her community. Her mental health has greatly improved over the past 3 years, and she is functioning at a very high level. In my expert opinion, Ms. Kahinda is telling a truthful story regarding the loss of her parents and her journey to the

US. Also in my opinion, if Freda were to be deported to Uganda it is extremely likely that there would be severe consequences for her mental health, and that she would be at high risk for suicide.

Thank you for considering this information in your continuing review of Freda's petition for visa. Please do not hesitate to contact me if you have any questions.

Sincerely,

B. Heidi Ellis, Ph.D.
Licensed Clinical Psychologist, Massachusetts license number 8105
Associate Director for the Center for Medical and Refugee Trauma
Boston Medical Center, Department of Child and Adolescent Psychiatry



**CASEY FAMILY SERVICES**

18 Palmer Street
Lowell, MA 01852-1818
TEL. (978) 937-1877
(800) 883-8836
FAX (978) 937-2262
www.caseyfamilyservices.org

November 10, 2004

Denis Riordan
District Director
U.S Citizenship and Immigration Services
JFK Federal Building Government Center
Boston, MA 02213

Dear Mr. Riordan,

This letter is in support of Freda Kahinda who has submitted an application for a Permanent Visa from the U.S Immigration Department.

I have known Freda Kahinda since April 2002. At that time she was referred to Casey Family Services for long-term foster care by the Department of Social Services and I was assigned as her caseworker. In that capacity, I was responsible for assessing Freda's emotional and mental health state and was charged with identifying an appropriate foster placement for her. One of the primary objectives of Casey Family Services is to connect kids to families where they can grow and develop lifelong connections. In so doing, caseworkers work very closely and intensely with the youths.

As Freda's caseworker I met with her on a weekly basis. In between meetings I had regular phone contacts with both Freda and her foster mother. The story she told about her past life has been consistent throughout my relationship with her. Freda reported that her parents were deceased and had died when she was quite young. According to her, she later lived with an abusive aunt from whose home she ran. In talking about her parents and her past life Freda has been sad and tearful and has displayed symptoms associated with past trauma.

From all indications, Freda's past life has affected both her emotional state as well as her physical state. At the time of her referral to Casey Family Services she was depressed and anxious. Freda was prescribed psychotropic medications of Zoloft and Trazadone to keep her functioning and to help her with sleep. She was also experiencing stomach pains and frequent headaches for which medication was also prescribed. Freda was being treated medically and psychiatrically at Boston Medical Center.

With the support of a dedicated therapist, committed foster mother and the support of Casey, Freda slowly began making progress. Although she continues to exhibit symptoms of Post Traumatic





ACCREDITED

Stress, Freda's emotional state has greatly improved.   She sometimes complains about pains in her knees, the result of being hit with a glass bottle by her aunt and having the glass shattered inside her kneecap.  She also occasionally suffers from depression and anxiety because the collaterals and professionals in her life are her only connection.

Despite the overwhelming difficulties she has faced, Freda stands out in the Casey program as one of our most outstanding youths.  She has developed a close and loving relationship with her foster mother.  Freda is a wonderful artist and she has used her art as a form of therapeutic healing.  When the opportunity of attending school was presented to Freda she readily took the opportunity to pursue an education.  She has been willing to work with this agency and the Department of Social Services.  When Freda turned eighteen last February, she signed a Voluntary Placement Agreement with the Department of Social Services.

I sincerely hope you will consider the above information when you review Freda Kahinda's case. Thank you very much.

Sincerely,

Anita T Marshall, LICSW

Anita T. Marshall, LICSW
Social Worker



## EMBASSY OF THE REPUBLIC OF UGANDA

5911 SIXTEENTH STREET, N.W.
WASHINGTON, D.C. 20011-2896

TELEPHONE  (202) 726-7100
TELEPHONE  (202) 726-0416
FACSIMILE  (202) 726-1727
TELEX  440306 UGDA-UI
E-MAIL  UGEMBASSY@AOL.COM

OUR REFERENCE

C/ADM/W3

Nov 23rd 2004

Kaplan, O'Sullivan & Friedman, LLP
        Attorney at Law
Ten Winthrop Square, Third Floor Boston, Massachusetts 02110
Tel: 617-482-4500
Fax 617-451-6228

Attn: Maureen O'Sullivan Esq.

**Ref: Freda Kahinda**

I am writing to you in respect of the above, Freda Kahinda, a citizen of Uganda regarding her birth certificate. I understand that Immigrations Department has concerns about certain aspects of Ms. Kahinda's birth certificate. I hope a short explanation of the birth certificate process in Uganda will clarify any questions that the Immigrations Department may have on the matter.

Ms. Kahinda was born in Mulago Hospital, as her birth certificate indicates. Standard hospital practice in Uganda is to record all birth information at the time of birth. At least one parent must sign this record of birth. When the Ministry of Justice later registers and issues birth certificate, it extracts the information directly from the hospital's records of birth. It is highly likely that Ms Kahinda's father signed her hospital record of birth as the "declarant", and that this information was later transferred to her birth certificate. The document mistakenly does not identify Ms Kahinda's father as "deceased". However this should not be taken as evidence that her father obtained the birth certificate.

The "date of registration" regards the date that birth information is officially placed in the Uganda birth registry. As Freda's birth certificate shows, her birth was registered on September 3rd 2003 and the birth certificate was issued on September 5th 2003. This delay is routine, as time is needed to issue the final document.

Sincerely

Bwomono-Okobo E
Consular Officer

**Commonwealth of Massachusetts**
**Department of Social Services**

## Voluntary Placement Agreement

**Date of Agreement:**   8 / 12 / 84

This Agreement is being entered into, as of the date noted above, between the Massachusetts Department of Social Services (DSS) and:

Freda Kahinda
U Mass./ Amherst

pursuant to M.G.L. ch. 119, Section 23 and it replaces and includes by reference any similar agreements that have previously been entered into by and between DSS and the Parent(s)/Mature Child. The purpose of this Agreement is to specify the rights and responsibilities of the Parent(s)/Mature Child and DSS with regard to the Child(ren) specified in Paragraph 1 below.

**1. Child(ren): This Agreement is being entered with regard to the following child:**

**Name**: Freda Kahinda

**Date of Birth**: 02/02/1985

**2. Selection of the Out-of-Home Placement for the Child(ren):** DSS and the Parent(s)/Mature Child agree to work cooperatively in selecting an out-of-home placement for the Child(ren): e.g., foster home, group care program, residential school, etc. If no mutually acceptable placement is identified, DSS will have the right to select an out-of-home placement for the Child(ren). The Parent(s)/Mature Child agrees to participate in the placement process by taking the Child(ren)/going to preplacement interviews whenever possible, and by providing whatever information is necessary in order to facilitate the placement process. DSS will also have the right to authorize the temporary departure of the Child(ren) from the Commonwealth or the country, provided that the Child(ren) is/are accompanied by a DSS representative or by a representative from an out-of-home care provider authorized by DSS.

**3. Service Plan:** The DSS social worker and the Parent(s)/Mature Child will jointly develop a written Service Plan which will specify the tasks that will be undertaken by the DSS social worker, the Parent(s)/Mature Child, the out-of-home care provider, and any other agencies that will be providing services to the Child(ren). The Parent(s)/Mature Child will sign and be provided with a copy of the Service Plan at the time that this Agreement is signed, and the Service Plan will be reviewed by DSS with the Parent(s)/Mature Child at least once every six (6) months.

**4. Periodic Foster Care Reviews:** The Parent(s)/Mature Child agrees to attend and to participate in periodic Foster Care Reviews at least once every six (6) months. The purpose of these reviews will be to determine the appropriateness of continuing the placement and to make any changes in the child(ren)'s service plan.

**5. Payment for Services Provided to the Child:** DSS will make direct payment to the out-of-home care provider in accordance with the approved and established rates, and in accordance with the provisions of any cost-sharing agreements that DSS may have with local school departments and/or other state agencies.

The Parent(s)/Mature Child agrees to contribute to the cost of the services being provided to the Child by paying a monthly fee as determined by DSS in accordance with 110 CMR 4.08A and the Department's Sliding Fee Policy. In the event that the Parent(s) refuses or ceases to pay the fees, DSS will end this Agreement or seek custody of the Child in court.

The Parent(s) is expected to obtain entitlement benefit(s) such as Supplemental Security Income (SSI) or Social Security Assistance (SSA) for an eligible Child. The Parent(s) may decide to identify DSS as representative payee for such benefit(s) but if the Parent(s) fails to obtain such benefits, DSS will pursue becoming the representative payee on behalf of the Child. When DSS is identified as the representative payee, a Personal Needs Account is established for the Child, and an amount equal to up to 25% of the Child's benefits but not to exceed $2,000 will be contributed to the account each month. When the Parent(s) is the representative payee, the Parent(s) may be required to contribute an amount equal to 75% of the benefit(s) to the Department in accordance with the Department's Sliding Fee Policy.

**Commonwealth of Massachusetts**
**Department of Social Services**

## Voluntary Placement Agreement

**Date of Agreement:**   8 / 12 / 04

This Agreement is being entered into, as of the date noted above, between the Massachusetts Department of Social Services (DSS) and:

Freda Kahinda
UMass./Amherst

*pursuant to M.G.L. ch. 119, Section 23 and it replaces and includes by reference any similar agreements that have previously been entered into by and between DSS and the Parent(s)/Mature Child. The purpose of this Agreement is to specify the rights and responsibilities of the Parent(s)/Mature Child and DSS with regard to the Child(ren) specified in Paragraph 1 below.*

**1. Child(ren):  This Agreement is being entered with regard to the following child:**

**Name:** Freda Kahinda

**Date of Birth:** 02/02/1985

**2. Selection of the Out-of-Home Placement for the Child(ren):** DSS and the Parent(s)/Mature Child agree to work cooperatively in selecting an out-of-home placement for the Child(ren): e.g., foster home, group care program, residential school, etc. If no mutually acceptable placement is identified, DSS will have the right to select an out-of-home placement for the Child(ren). The Parent(s)/Mature Child agrees to participate in the placement process by taking the Child(ren)/going to preplacement interviews whenever possible, and by providing whatever information is necessary in order to facilitate the placement process. DSS will also have the right to authorize the temporary departure of the Child(ren) from the Commonwealth or the country, provided that the Child(ren) is/are accompanied by a DSS representative or by a representative from an out-of-home care provider authorized by DSS.

**3. Service Plan:** The DSS social worker and the Parent(s)/Mature Child will jointly develop a written Service Plan which will specify the tasks that will be undertaken by the DSS social worker, the Parent(s)/Mature Child, the out-of-home care provider, and any other agencies that will be providing services to the Child(ren). The Parent(s)/Mature Child will sign and be provided with a copy of the Service Plan at the time that this Agreement is signed, and the Service Plan will be reviewed by DSS with the Parent(s)/Mature Child at least once every six (6) months.

**4. Periodic Foster Care Reviews:** The Parent(s)/Mature Child agrees to attend and to participate in periodic Foster Care Reviews at least once every six (6) months. The purpose of these reviews will be to determine the appropriateness of continuing the placement and to make any changes in the child(ren)'s service plan.

**5. Payment for Services Provided to the Child:** DSS will make direct payment to the out-of-home care provider in accordance with the approved and established rates, and in accordance with the provisions of any cost-sharing agreements that DSS may have with local school departments and/or other state agencies.

The Parent(s)/Mature Child agrees to contribute to the cost of the services being provided to the Child by paying a monthly fee as determined by DSS in accordance with 110 CMR 4.08A and the Department's Sliding Fee Policy. In the event that the Parent(s) refuses or ceases to pay the fees, DSS will end this Agreement or seek custody of the Child in court.

The Parent(s) is expected to obtain entitlement benefit(s) such as Supplemental Security Income (SSI) or Social Security Assistance (SSA) for an eligible Child. The Parent(s) may decide to identify DSS as representative payee for such benefit(s) but if the Parent(s) fails to obtain such benefits, DSS will pursue becoming the representative payee on behalf of the Child. When DSS is identified as the representative payee, a Personal Needs Account is established for the Child, and an amount equal to up to 25% of the Child's benefits but not to exceed $2,000 will be contributed to the account each month. When the Parent(s) is the representative payee, the Parent(s) may be required to contribute an amount equal to 75% of the benefit(s) to the Department in accordance with the Department's Sliding Fee Policy.

In appropriate cases, the Parent(s)/Mature Child and DSS will specify in the Service Plan that the Parent(s)/Mature Child will also make direct payments to the residential/rehabilitative program.

No payment will be required if the family's gross income falls at or below 150% of the federal poverty level as stated in 110CMR 4.08A(1). The family may also request a full or partial waiver of the fee, including the amount equal to 75% of the Child's SSI or Title II benefit, if the imposition of the fee will create an extreme financial hardship of if the actual and reasonable monthly expenses directly attributable to the Child in placement exceed 25% of the Child's monthly SSI or Title II benefit.

**6. Health Care Services:** The DSS social worker and the Parent(s)/Mature Child will review the Child(ren)'s health care service needs (e.g., medical, dental, psychological, etc.), and the Parent(s)/Mature Child will assist the DSS social worker in preparing a Medical Passport, which will include the relevant medical history of the Child(ren). The Parent(s)/Mature Child also agrees to maintain any existing health care coverage on behalf of the Child(ren), and to use such coverage to pay for the Child(ren)'s health care needs while the Child(ren) is/are in the out-of-home placement.

| Policy Holder | Insurance Type | Organization Name | Policy Number |
|---|---|---|---|
| Miss Freda Kahinda | | | |

The Parent(s)/Mature Child will arrange for and approve all routine and emergency health care services that the Child(ren) may need while in the out-of-home placement. In this regard, however, the Parent(s)/Mature Child delegates to DSS the authority to authorize necessary health care services in the event that the Parent(s)/Mature Child cannot be reached—or in the event that the Mature Child cannot make such decision—at the time that such services are needed by the Child(ren).

**7. Visitation:** The Parent(s)/Mature Child agrees to develop (in conjunction with the DSS social worker and the out-of-home care provider) —and to maintain—a schedule for visitation that shall become part of the service plan. The Parent(s)/Mature Child agrees to notify DSS and/or the program at least twenty four (24) hours in advance if a scheduled visit must be canceled.

**8. Educational Advocacy:** It is agreed that if DSS determines that the Parent(s)/Mature Child is capable of advocating for the educational rights of the Child, the Parent(s)/Mature Child will retain the right to act as the Child's Educational Advocate.

If, in the judgment of DSS, the Parent(s)/Mature Child is not capable, DSS will notify the Department of Education that an Educational Advocate needs to be appointed.

**9. Release of Information:** DSS will have the right to release such information about the child(ren) and/or other family members as may be, in the judgment of DSS, reasonably necessary in order to ensure that the Child(ren) is/are being provided with appropriate services.

**10. Right to Fair Hearings/Grievances:** The Parent(s)/Mature Child will have the right to request a fair hearing if the services described in this agreement are suspended, reduced or terminated by DSS. In addition, if the Parent(s)/Mature Child is dissatisfied with the manner in which services are being provided, he/she may file a grievance with the DSS Area Director. More specific information regarding DSS's process for fair hearings and grievances will be supplied to the information regarding DSS's process for fair hearings and grievances will be supplied to the Parent(s)/Mature Child at the time this Agreement is signed.

**11. Changes of Address:** The Parent(s)/Mature Child agrees to inform DSS in writing and within three (3) working days of any change of address or telephone number.

**12. Termination:** This Agreement will continue until 02/01/2005 , which is six (6) months from the date noted above, unless (a) it is extended in writing by the parties, or (b) it is terminated sooner by either party giving the other party a written notice of termination. Such a written notice of termination will become effective three (3) working days after receipt. If the Parent(s)/Mature Child provide(s) written notice of termination, DSS will either return the Child(ren) home or petition a court for custody within the three (3) working days noted above if DSS believes that returning the Child(ren) to his/her/their home will place the Child(ren) at risk of abuse or neglect.

**13. Changes:** This Agreement may only be changed in writing and must be signed by all of the parties who signed the original agreement.

**14. Fee for Substitute Care:** The Parent(s) agrees to pay a fee as determined by DSS pursuant to 110 CMR 4.08A(1). If the gross family income is at or below 150% of the federal poverty level, the Department will not charge a fee for substitute care services.

**15. Signatures:**

X _Landra Sprole_                                          _11 5th /04_
(a) Parent(s) or Mature Child *

(b) Parent(s)                          _N/A_

DSS Social Worker

DSS Supervisor        _Ron Roy_    _11-8-04_

DSS Area Director

**16. Extensions:** This agreement will be extended until _2 / 2 /05_, which is not more than 12 months from the date the initial agreement began.

(a) Parent(s) or Mature Child

(b) Parent(s)

DSS Social Worker

DSS Supervisor

DSS Area Director

This agreement will be extended until _/ /_, which is not more than 18 months from the date the initial agreement began.

(a) Parent(s) or Mature Child

(b) Parent(s)

DSS Social Worker

DSS Supervisor

DSS Area Director

* The 72-hour limit (110 CMR 4.13) does not apply to an individual over 18 who is signing himself/herself into care.

# EXHIBIT G

**Plaintiffs letter to Defendant requesting a meeting to resolve recurring issues in special immigrant juvenile cases, October 21, 2004.**

## KAPLAN, O'SULLIVAN & FRIEDMAN, LLP
### Attorneys At Law

Ten Winthrop Square • Third Floor, Boston, Massachusetts 02110
E-Mail: info@kof-law.com • *www.kof-law.com*

Harvey Kaplan
Maureen O'Sullivan
Jeremiah Friedman

Tel: (617) 482-4500
Fax: (617) 451-6828
Fax: (617) 451-6826

October 21, 2004

Mr. Denis Riordan
District Director
Boston District Office
U.S. Department of Homeland Security
USCIS
15 New Sudbury St.
JFK Federal Building
Boston, MA 02203

**FAX (617) 565-4534**

Dear Mr Riordan:

Please find enclosed a copy of the letter which was sent to you by Louis H. Spence, the Commissioner of the Department of Social Services. This is the letter which asks for your assistance in resolving the delays in adjudication of special immigrant juvenile cases at the Boston District Office and includes a list of long pending cases. During our conversation, you indicated that you have not previously seen the letter and would like a copy..

In addition, this letter asks for an opportunity to meet with you and your staff for an information session during which we could share information regarding agency procedures and answer questions about the Department of Social Services and their procedures and standards.

I am writing to reiterate this request for a meeting at your earliest possible convenience. This request has taken on some urgency now that I have received four notices of intent to deny special immigrant juvenile cases. Those notices of intent to deny all relate to cases on the list of long pending cases that was attached to Commissioner Spence's letter to you. Taken together, those notices reflect a profound misunderstanding of child welfare law and practice in Massachusetts.

First and foremost, the primary focus of decision making in child welfare is the **child** and what is in the child's best interest. The special immigrant provisions in the INA retain that focus, exempting the child from having to prove manner of entry and making many of the grounds of inadmissibilty not applicable to these child applicants. Yet that focus is totally lacking from these notices of intent to deny. For example one of the notices of intent to deny states " you cannot be deemed dependent on long-term foster care after your mother has expressed a credible interest in having you live with her again." This is simply not true. Moreover, it is not determinative of whether a child is abused, neglected, or abandoned, or the child's need for long

6

term foster care. Most parents whose children are placed in foster care for reasons of abuse or neglect express the desire to have their child returned to them. For reasons related to safety and stability the child may not be returned to them.

The standard in special immigrant juvenile cases is set forth in the statute in section 101 (a)(27)(J) of the Immigration and Nationality Act. That defines special immigrant juveniles as "juveniles deemed eligible for long term foster care based on abuse, neglect, or abandonment". The regulations further provide that eligible for long term foster care means "a determination has been made by the juvenile court that family reunification is no longer a viable option." 8 CFR 204.11A . The standards for adjudicating special immigrant juvenile petitions are set forth in some detail in a Memorandum from USCIS headquarters published by William R. Yates on May 27, 2004. The memorandum indicates that all special immigrant juvenile cases must be supported by a court order which establishes: 1. that the child has been declared dependant on the Juvenile Court or placed under state custody and, 2. deemed eligible for long-term foster care due to abuse, neglect, or abandonment. In addition, there must be a finding that it would not be in the child's best interest to be returned to his or her home country or that of the parents.

The immigration standard for special immigrant juvenile, as set out in the statute and regulations, focuses on the reason that the child has come into state custody. It is important to understand that many of the children who are now applying for special immigrant juvenile status have been in state custody for several years. It is one of the reasons why many of the applicants tend to be older teenagers or even almost 21. Another reason is that special immigrant juvenile status is sought only after the Department determines that the child will not be reunified with his or her parent or guardian. In all but a handful of cases, the Department is required by law to make reasonable efforts to reunify the child with his or her parents. In the cases that come before your agency, the Court has placed the child in the custody of the Department and is required to hold annual hearings to review Department's permanency plan for the child, i.e., will the child be reunified with the parents, or will the child remain in foster care until he or she exits through adoption, guardianship or planned living arraignments such as independent living. Throughout these proceedings, parents and child alike have a right to counsel.

In an effort to help Immigration Examiners understand the lengths to which DSS and the state courts go to involve the parents and to foster reunification if possible, a deputy general counsel for the Department of Social Services prepared the enclosed description of the standard process which DSS uses in each and every case. As you can see the process involves a state government agency going to great lengths to include the parents and make a careful determination regarding the best interest of the child. Yet, when that same state agency files the special immigrant cases with your office, they are often met with hostility and suspicion .

In many of these cases we have been asked to provide additional information regarding the facts

that form the basis for the juvenile court's ruling on dependency and eligibly for long-term foster care. Whenever possible we have gone to great lengths to provide all documentation requested. The memorandum from Mr. Yates described above states "the adjudicator generally should not second guess the court rulings or question whether the courts order was properly issued. Orders that include or are supplemented by specific findings of fact as to the above listed ruling would usually be sufficient to establish eligibility for consent. Such findings need not be overly detailed but must reflect that the juvenile court made an informed decision." Since Mr. Yates issued this order DSS has obtained more detailed court order to support these cases. However, many of the cases on the list and all of the cases in which we received notices of intent to deny are older cases.

In the four recent notices of intent to deny, the adjudicator has raised a variety of issues that as reasons to deny the petitions when those issues are not relevant to the essential standard of whether the child in state custody due to abuse, neglect, or abandonment. For example in one of the cases the adjudicator criticizes the child for attempting to find work in the U.S. and attempting to go to school (which the Department of Social Services would expect of a child in placement). The implication is that a child who attempts to work or go to school is somehow not eligible for special immigrant status. The same child came into DSS custody because he was homeless and living at the Pine Street Inn. The court looked at the facts of case and made a determination that his family had neglected and abandoned him. Yet, the notice of intent to deny mentions that because he still has contact with his parents and that they hope that things work out for him shows that they have not neglected him. This is a child who was wandering around the U.S. looking for work, living on the premises of his workplace and eventually becoming homeless from the age of 16. In the eyes of the state court with jurisdiction to decide legal custody and child protection, this is considered neglect. It means that the parent is not providing the child minimally adequate essential care and supervision. It does not means that the parent does not love the child or want the child to be with him or her.

We would be very grateful for an opportunity to discuss this and other issues with you and to discuss how we can move forward with better understanding of how each agency works. I believe that it should be possible for these two government agencies the, DSS, and the CIS to work together to resolve these issues in a timely manner. We would very much like to prepare and present the cases addressing the issues of most importance to you and would be very grateful to be told that directly up front rather than in the context of notices of intent to deny.

Please me know when we can appear for a meeting. In the meantime please note that I have requested a 30 day extension of time in which to respond to the following three notices of intent to deny:

Filimon Bolanos Cruz A96 407 997

Freda Kahinda A79 680 762
Margaret Bukenya A79 679 221.

I respectfully, request that we be granted an additional 30 days until November 20, 2004 to respond to these notices,. We will submit a response to the fourth case (A76 002 201) within the original timeframe.

Thank you very much.

Sincerely yours,

Maureen O'Sullivan
MOS:wo
enc.

# KAPL. ., O'SULLIVAN & FRIEDMAN, LL
### Attorneys At Law

Ten Winthrop Square • Third Floor, Boston, Massachusetts 02110

E-Mail: info@kof-law.com • *www.kof-law.com*

Harvey Kaplan
Maureen O'Sullivan
Jeremiah Friedman

Tel: (617) 482-4500
Fax: (617) 451-6828
Fax: (617) 451-6826

February 24, 2005

Denis Riordan
District Director
USCIS
JFK Federal Building
Government Center
Boston, MA 02203

## NOTICE OF INTENT TO FILE MANDAMUS ACTION IN SPECIAL IMMIGRANT JUVENILE CASES

Dear Mr. Riordan:

This is notice that we intend to file mandamus actions in the following five cases. Each of these cases has been pending for a long time. We have responded to all of your requests for evidence with all of the documents that it is possible to obtain. On September 27, 2004, the Commissioner of the Department of Social Services wrote to you with a request for your help in resolving these cases. You responded by issuing notices of intent to deny in four out of the five cases. We have responded in detail to each of those notices. Each of those responses were submitted to your office more than 90 days ago.

I wrote to you on October 21,4004, asking for an opportunity to meet with you because we feel that the notices of intent to deny demonstrated a lack of understanding of the child welfare system in Massachusetts. You told me that you would have a meeting, but to date, months have passed and these cases are still not adjudicated. This delay causes tremendous hardship for these children and the agency (DSS) which is taking care of them. They have difficulty going to school, getting jobs and going on with their lives in a way which would enable them to overcome the abuse, neglect or abandonment that each of them has suffered.

We ask you to apply the Memorandum of William Yates which specifies the legal criteria for approval of these juvenile cases. In our responses to your notices of intent to deny, we explain how each of these cases meets that criteria which is dictated by your Headquarters. We have included the case of Peter Francois on this list, even though we have not received a notice of intent to deny in that case because it has been pending for four years.

**Peter Francois, A78 629 893, interviewed 10/2/01. He ages out 7/5/05**

**Freda Kahinda, A79 680 762, interviewed 5/19/03, responded to NOID 11/23/ 04**

**Margaret Bukenya, A79 679 221, interviewed 6/18/03, responded to NOID on   11/22/04**

**Mary Ajede, A76 002 201, interviewed 7/1/03, responded to NOID on  10/21/04. She ages out 5/5/05**

**Filemon Bolanos Cruz, A96 407 997, interviewed 12/10/03, responded to NOID on 11/23/04**

As you can see from the list, two of the juveniles will age out this year.  We cannot in good conscience wait any longer to take these facts before the federal court.  We have done everything in our power to resolve these cases. **We intend to file mandamus actions in these five cases in two weeks, on March 11, 2005.**

Sincerely,


Maureen O'Sullivan


cc
Dianne Curran, Deputy General Counsel
Department of Social Services
Karen Ann Haydon
Myra Strauss

# EXHIBIT H

**Plaintiffs notice to Defendants of notice of intent to file mandamus action, February 24, 2005.**

## KAPL  , O'SULLIVAN & FRIEDMAN, LI

### Attorneys At Law

Ten Winthrop Square • Third Floor, Boston, Massachusetts 02110

E-Mail: info@kof-law.com • *www.kof-law.com*

Harvey Kaplan
Maureen O'Sullivan
Jeremiah Friedman

Tel: (617) 482-4500
Fax: (617) 451-6828
Fax: (617) 451-6826

February 24, 2005

Denis Riordan
District Director
USCIS
JFK Federal Building
Government Center
Boston, MA 02203

## NOTICE OF INTENT TO FILE MANDAMUS ACTION IN SPECIAL IMMIGRANT JUVENILE CASES

Dear Mr. Riordan:

This is notice that we intend to file mandamus actions in the following five cases. Each of these cases has been pending for a long time. We have responded to all of your requests for evidence with all of the documents that it is possible to obtain. On September 27, 2004, the Commissioner of the Department of Social Services wrote to you with a request for your help in resolving these cases. You responded by issuing notices of intent to deny in four out of the five cases. We have responded in detail to each of those notices. Each of those responses were submitted to your office more than 90 days ago.

I wrote to you on October 21,4004, asking for an opportunity to meet with you because we feel that the notices of intent to deny demonstrated a lack of understanding of the child welfare system in Massachusetts. You told me that you would have a meeting, but to date, months have passed and these cases are still not adjudicated. This delay causes tremendous hardship for these children and the agency (DSS) which is taking care of them. They have difficulty going to school, getting jobs and going on with their lives in a way which would enable them to overcome the abuse, neglect or abandonment that each of them has suffered.

We ask you to apply the Memorandum of William Yates which specifies the legal criteria for approval of these juvenile cases. In our responses to your notices of intent to deny, we explain how each of these cases meets that criteria which is dictated by your Headquarters. We have included the case of Peter Francois on this list, even though we have not received a notice of intent to deny in that case because it has been pending for four years.

**Peter Francois, A78 629 893, interviewed 10/2/01. He ages out 7/5/05**

Freda Kahinda, A79 680 762, interviewed 5/19/03, responded to NOID 11/23/ 04

Margaret Bukenya, A79 679 221, interviewed 6/18/03, responded to NOID on   11/22/04

Mary Ajede, A76 002 201, interviewed 7/1/03, responded to NOID on  10/21/04. She ages out 5/5/05

Filemon Bolanos Cruz, A96 407 997, interviewed 12/10/03, responded to NOID on 11/23/04

As you can see from the list, two of the juveniles will age out this year.  We cannot in good conscience wait any longer to take these facts before the federal court.  We have done everything in our power to resolve these cases. **We intend to file mandamus actions in these five cases in two weeks, on March 11, 2005.**

Sincerely,


Maureen O'Sullivan




cc
Dianne Curran, Deputy General Counsel
Department of Social Services
Karen Ann Haydon
Myra Strauss

# EXHIBIT I

# Defendants Memorandum #2 Field Guidance on Special Immigrant Juvenile Status petitions.

U.S. Department of Homeland Security
425 I Street, N.W.
Washington, DC 20529



U.S. Citizenship
and Immigration
Services

HQADN 70/23

# Interoffice Memorandum

To:     Regional Directors
        District Directors

From:   William R. Yates   (Janis Sposato /s/)
        Associate Director for Operations

Date:   May 27, 2004

Re:     Memorandum #3 – Field Guidance on Special Immigrant Juvenile Status Petitions

The purpose of this memorandum is to provide policy and procedural clarification on the adjudication of Special Immigrant Juvenile (SIJ) petitions. This guidance memorandum, the third since the 1997 statutory amendment, consolidates and supercedes all previous guidance issued by the Immigration and Naturalization Service.[1]

## Background

Section 203(b)(4) of the Immigration and Nationality Act (INA) allocates a percentage of immigrant visas to individuals considered "special immigrants" under section 101(a)(27) of the INA, including those aliens classified as special immigrant juveniles under Section 101(a)(27)(J). Section 113 of Pub. L. No. 105-119, 11 Stat. 2440 (November 26, 1997), amended the definition of a "special immigrant juvenile" to include only those juveniles deemed eligible for long-term foster care based on abuse, neglect, or abandonment, and added two provisions that require the consent of the Secretary of the Department of Homeland Security (DHS) (formerly the Attorney General) for SIJ cases. One provision requires *specific* consent to a juvenile court's jurisdiction over dependency proceedings for a juvenile in DHS custody; the other requires *express* consent to the juvenile court's dependency order serving as a precondition to a grant of SIJ status. In the case of juveniles in custody due to their immigration status (either by US Immigration and Customs Enforcement (ICE) or by the Office of Refugee Resettlement (ORR)), the specific consent must be obtained *before* the juvenile may enter juvenile court dependency proceedings; failure to do so will render invalid any order issued as a result of such proceedings.

---

[1] Initial guidance was provided by memorandum dated August 7, 1998. That was superceded by Memorandum #2, dated July 9, 1999, which is superceded by this memorandum.

This memorandum addresses only those eligibility issues relating to the actual adjudication of the petition for special immigrant juvenile classification and the application for adjustment of status to that of lawful permanent residence, including the concept of "express consent". It does not address eligibility criteria relating to "specific consent.".

## Effect of SIJ approval

Approval of an SIJ petition (Form I-360) makes a petitioner immediately eligible to adjust status by filing a Form I-485. Once the Form I-485 is filed (either concurrently with the I-360, as is strongly encouraged, or subsequent to approval of an I-360), the juvenile may receive employment authorization pursuant to the pending adjustment application.[2] Juveniles who adjust status as a result of an SIJ classification enjoy all benefits of lawful permanent residence, including eligibility to naturalize after five years; however, they may not seek to confer an immigration benefit to their natural or prior adoptive parents. INA §101(a)(27)(J)(iii)(II). The granting of an SIJ petition or an application for adjustment to a juvenile confers no Federal Government duty or liability toward state child welfare agencies, even for those juveniles placed in foster care.

## Consent by Department of Homeland Security

Following the 1997 amendments to Sec. 101(a)(27)(J) and the Homeland Security Act of 2002, a juvenile alien seeking classification as a special immigrant juvenile based on a juvenile court's dependency order must have, in all cases, the "express consent" of the Secretary of the DHS. In those cases involving a juvenile in the actual or constructive custody of the federal government, the juvenile must first obtain "specific consent" to the juvenile court's jurisdiction from the Secretary, through ICE, before proceedings on issuing a dependency order for the juvenile may begin. *Specific consent* refers to a determination to permit a juvenile court, which otherwise would have no custody jurisdiction over the juvenile alien, to exercise jurisdiction for purposes of a dependency determination.

*Express consent* means that the Secretary, through the CIS District Director, has "determine[d] that neither the dependency order nor the administrative or judicial determination of the alien's best interest was sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect [or abandonment.]"[3] In other words, express consent is an acknowledgement that the request for SIJ classification is bona fide.

CIS officers adjudicating SIJ petitions need only consider whether the juvenile court order satisfies express consent requirements; however, as discussed below, information relating to a grant of specific consent may also be considered when determining eligibility for express consent.

While this memorandum does not address the criteria for issuing specific consent, officers must be satisfied that specific consent from ICE was timely granted in cases where such consent was required. This is discussed further below.

---

[2] 8 CFR 27.12(c)(9)
[3] See H.R. Rep. No. 105-405, at 130 (1997).

Memorandum #3 -- Field Guidance on Special Immigrant Juvenile Status Petitions
HQADN 70/23
Page 3

## Documentation Requirements for SIJ Petitions

Although current regulations allow for separate filing of the Form I-360 (Petition for Amerasian, Widow(er), or Special Immigrant) and the Form I-485 (Application To Register Permanent Residence or Adjust Status), USCIS strongly encourages concurrent filing of both forms in order to expedite the completion of the juvenile's application.

The Form I-360 must be supported by:

- Court order declaring dependency on the juvenile court or placing the juvenile under (or legally committing the juvenile to) the custody of an agency or department of a State.
- Court order deeming the juvenile eligible for long-term foster care due to abuse, neglect, or abandonment.[4]
- Determination from an administrative or judicial proceeding that it is in the juvenile's best interest not to be returned to his/her country of nationality or last habitual residence (or the juvenile's parents' country of nationality or last habitual residence)(hereinafter "home country")[5]; and
- Proof of the juvenile's age[6].

The Form I-485 must also be supported by documentation:

- Birth certificate or other proof of identity in compliance with 8 CFR 103.2;
- A sealed medical examination (Form I-639);
- Two ADIT-style color photographs; and, where applicable, also supported by:
- Evidence of inspection, admission or parole (if available; by law an individual with SIJ classification is deemed to be paroled for purposes of adjustment of status[7]);
- If the applicant is over 14, s/he must also submit a Form G-325A (Biographic Information);
- If the juvenile has an arrest record, s/he must also submit certified copies of the records of disposition; and
- If the juvenile is seeking a waiver of a ground of inadmissibility that is not otherwise automatically waived under INA §245(h)(2)(A), s/he must submit a Form I-601 (Application for Waiver of Ground of Excludability) and supporting documents establishing that waiver is warranted for humanitarian purposes, family unity, or in the public interest (supporting documents could include affidavits, letters, press clippings, etc.).

---

[4] The regulations provide: "Eligible for long-term foster care means that a determination has been made by the juvenile court that family reunification is no longer a viable option." 8 C.F.R. § 204.11(a).

[5] INA §101(a)(27)(J)(ii) This requirement can be satisfied through a determination made by the juvenile court and incorporated in the juvenile court order. *See infra.*

[6] Examples include an official birth certificate, passport, or foreign identity document issued by a foreign government, such as a cedula or cartilla. 8 CFR§204.11(d).

[7] INA §245(h)(1). Although deemed paroled as a matter of law, applicants may still be subject to INA §212(a)(2)(A), (B), and (C), §212(a)(3)(A), (B), (C), and (E), and §241(a)(5). See discussion below.

Memorandum #3 – Field Guidance on Special Immigrant Juvenile Status Petitions
HQADN 70/23
Page 4

Applicants may also submit a Form I-765 (Application for Employment Authorization) based on the pending Form I-485, if needed.

## The Court Order

The Court Order submitted in support of the Form I-360 *must establish*:

- The juvenile has been declared a dependent of the juvenile court or the court has placed the juvenile under (or legally committed the juvenile to) the custody of an agency or department of a State; and

The juvenile has been deemed eligible for long-term foster care due to abuse, neglect, or abandonment[8]

The Court Order will also *preferably establish* the following (these may be established in alternative ways as discussed later):

- Specific findings of fact in support of the Order, sufficient to establish a basis for USCIS express consent; and
- That it would not be in the alien's best interest to be returned to the alien's home country.

### Evidence to establish the best interests of the child not to return to home country

As noted above, a petition cannot be granted unless it has been determined in an administrative or judicial proceeding that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence. This determination may be made by the juvenile court. USCIS strongly encourages juvenile courts to address this issue and incorporate a finding into the court order. Nevertheless, the law contemplates that other judicial or administrative bodies authorized or recognized by the juvenile court may make such a determination[9]. If a particular juvenile court establishes or endorses an alternate process for this finding, a ruling from that process may satisfy the requirement.

### Evidence to establish express consent

The District Director, in his or her discretion, shall expressly consent to dependency orders that establish -- or are supported by appropriate evidence that establishes -- that the juvenile was deemed eligible for long-term foster care due to abuse, neglect, or abandonment, and that it is in the juvenile's best interest not to be returned to his/her home country. Such express consent should be given only if the adjudicator is aware of the facts that formed the basis for the juvenile court's rulings on dependency (or state custody), eligibility for long-term foster care based on abuse, neglect, or abandonment, and non-viability of family reunification, or the adjudicator determines that a reasonable basis in fact exists for these rulings. The adjudicator generally should not second-guess

---

[8] The regulation provides: "Eligible for long-term foster care means that a determination has been made by the juvenile court that family reunification is no longer a viable option." 8 C.F.R. § 204.11(a). A child adopted or placed in guardianship after receiving a dependency order continues to be considered eligible for long-term foster care under 8 C.F.R. §204.11(a), and, necessarily, remains considered a juvenile court dependent based on the prior dependency order.
[9] 8 C.F.R. §204.11(c)(6).

Memorandum #3 – Field Guidance on Special Immigrant Juvenile Status Petitions
HQADN 70/23
Page 5

the court rulings or question whether the court's order was properly issued. Orders that include or
are supplemented by specific findings of fact as to the above-listed rulings will usually be sufficient
to establish eligibility for consent. Such findings need not be overly detailed, but must reflect that
the juvenile court made an informed decision.

The role of the District Director in determining whether to grant express consent is limited to
the purpose of determining special immigrant juvenile status, and not for making determinations of
dependency status.[10]

If an order (or order supplemented with findings of fact, as described above) is not sufficient
to establish a reasonable basis for consent, the adjudicator must review additional evidence to
determine whether a reasonable factual basis exists for the court's rulings. To do so, the adjudicator
may request that the petitioner provide actual records from the judicial proceeding; however,
adjudicators must be mindful that confidentiality rules often restrict disclosure of records from
juvenile-related proceedings, so seeking such records directly from the court may be inappropriate,
depending on the applicable State law. In the alternative, the adjudicator may request the petition to
provide an affidavit from the Court, or the state agency or department in whose custody the child has
been placed, summarizing the evidence presented to the court. Additionally, if the applicant had
obtained a grant of specific consent from ICE, the grant should be considered a favorable factor in
establishing express consent. The adjudicator may also consider the evidence that provided the
foundation for the granting of specific consent.

If an adjudicator encounters what s/he believes to be a fraudulently obtained order s/he
should promptly notify a supervisor, who should immediately notify USCIS Headquarters, Office of
Field Operations and Office of Program and Regulation Development, through designated channels,
to coordinate appropriate follow-up.

Because express consent essentially is a determination that the order reflects a bona fide basis
for special immigrant juvenile status, approval of an SIJ application itself shall serve as a grant of
express consent.

**Validity of Juvenile Court Orders in Previously Detained Cases (Specific Consent)**

The adjudicator must be satisfied that the petitioner obtained specific consent from ICE
where necessary. If specific consent was necessary but not timely obtained, a juvenile court
dependency order is not valid and the petition must be denied. INA § 101(a)(27(J)(iii)(I); 8 C.F.R §
204.11(c)(3). Please check with the local ICE juvenile coordinator who handled the case to
determine whether specific consent was required, and if so, whether it was timely granted.

---

[10] H.R. Rep. No. 105-405, at 130 (1997)

Memorandum #3 -- Field Guidance on Special Immigrant Juvenile Status Petitions
HQADN 70/23
Page 6

## Inadmissibility

SIJ beneficiaries are excused from many requirements that other applicants for adjustment must meet. Most notably, SIJ applicants are excused from several grounds of inadmissibility,[11] including provisions prohibiting entry of those likely to become a public charge,[12] those without proper labor certification,[13] and those without a proper immigrant visa.[14] In addition, most other grounds of inadmissibility may be waived for humanitarian purposes, family unity, or when it is otherwise in the public interest. The only grounds of inadmissibility that are not waivable for SIJ applicants are those listed in INA§212(a)(2)(A), (B), and (C)[15] and (3)(A), (B), (C), and (E).

## Aging Out

Current regulations require that an applicant for SIJ adjustment must be under 21 years old, not only at the time of application, but also at the time of adjustment.[16] Failure to adjust prior to age 21 results in denial of the application, regardless of the merits of the underlying dependency order; this is known as "aging out." Applicants are strongly encouraged to submit petitions and applications in a timely fashion and to notify the agency when the risk of aging out is strong. In addition, District Offices should assess new applications to avoid the risk of SIJ age outs, and take the following precautions to prevent it:

- Schedule SIJ adjustment interviews well in advance of the petitioner's 21st birthday, or in jurisdictions where court dependency terminates before age 21, well in advance of that birth date (e.g. age 18 in New Jersey).
- Ensure proper completion of background checks, including fingerprint clearances and name-checks (this means all clearances should be scheduled no later than 60 days prior to the age-out date).
- Provide for expedited processing of cases at risk of aging out (e.g. in-person filing for applicants who age out within a year; priority interviews and fingerprinting; other appropriate administrative relief).

Officers are also reminded that, in many circumstances, Section 424 of the USA PATRIOT Act provides SIJ beneficiaries limited age-out protection by extending benefits eligibility for 45 days beyond the 21st birthday. Pursuant to Section 424(2), an alien who is the beneficiary of a petition or application filed on or before September 11, 2001, whose 21st birthday occurs after September 2001 is considered to be a child for 45 days after the alien's 21st birthday for purposes of adjudicating such petition or application.[17]

---

[11] See INA§245(h)(2)(A). In addition, the corresponding grounds of removal under INA §237(c) are also waived for juveniles granted SIJ.

[12] INA§212(a)(4)

[13] INA§212(a)(5)(A)

[14] INA§212(a)(7)(A)

[15] Except for a single instance of simple possession of 30 grams or less of marijuana.

[16] 8 CFR§205.1(a)(3)(iv)(A).

[17] This provision has been specifically applied to SIJ beneficiaries. *See Pierre v. McElroy*, 200 F.Supp.2d 251 (SDNY 2001). Note: This necessarily includes treating the juvenile as under juvenile court jurisdiction during the 45-day period.